PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3505
_____

UNITED STATES OF AMERICA

v.

TODD ROBINSON,
                    Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 09-cr-00285-001)
District Judge: Honorable Jose L. Linares

_____

Argued March 24, 2010

Before:  RENDELL, AMBRO, and FUENTES,
Circuit Judges.

(Filed: April 22, 2010)

_____

Joshua P. Cohn, Esq.    **[ARGUED]**
Cohn, Lifland, Pearlman, Herrmann & Knopf
Park 80 Plaza West One
Saddle Brook, NJ 07663
   *Counsel for Appellant*

Samuel A. Stern, Esq.    **[ARGUED]**
George S. Leone, Esq.
Office of the United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
   *Counsel for Appellee*

-----

OPINION OF THE COURT

-----

RENDELL, <u>Circuit Judge</u>.

Todd Robinson pled guilty to conspiring to steal and convert United States Treasury checks in violation of 18 U.S.C. §§ 641 and 371.  On appeal he challenges the District Court's calculation of his sentencing guideline range of 27 to 33 months imprisonment because in arriving at the range the Court included the number and dollar amount of checks converted by another person, Travis Lynn, with whom Robinson contends he did not conspire.  Robinson participated in a scheme led by an individual named Jerrod Jeffress.  Jeffress provided "check-cashers"– Robinson and three other individuals, including Lynn – with stolen Treasury checks, as well as fake identification that matched the names on the checks, and drove them to check-

2

cashing stores.

Robinson pled guilty to an information charging him with conspiring with "others," but there was no specific mention in his plea colloquy of any individual other than Jeffress. At Robinson's sentencing, he acknowledged that he personally attempted to cash five checks, with a total intended loss of $5,869.00. Robinson maintained that he had no involvement with any of the other individuals who worked for Jeffress and that therefore none of their conduct should be attributed to him for sentencing purposes. Robinson did not dispute, however, that he knew who Lynn was, that he knew Lynn was working for Jeffress, or that he and Lynn were in the same check-cashing facility at the same time on two separate occasions.[1] The government argued at sentencing that Robinson worked with the other check-cashers, particularly Lynn, and should be held responsible for their conduct for sentencing purposes. The District Court accepted the government's position as to Lynn, stating, "I think here by virtue of their presence together at the check-cashing stores on a number of occasions, certainly [Robinson's] conduct with co-defendant Lynn, when all taken into consideration together, makes it certainly appropriate to apply the enhancement." A.31. The District Court therefore considered the total dollar amount of checks Robinson and Lynn attempted to cash and applied a four-level enhancement to

[1] Robinson also did not specifically object to a paragraph in his Presentence Investigation Report that stated that he conspired with Jeffress, Lynn, Glenda Blackmon, and Richard Davis. Presentence Investigation Report 7, ¶28.

3

Robinson's sentence under United States Sentencing Guidelines Manual ("USSG") § 2B1.1(b)(1)(C) (2009) for a loss of more than $10,000 but less than $30,000, and a two-level enhancement based on 10 or more victims pursuant to USSG § 2B1.1(b)(2)(A)(i).

**DISCUSSION[2]**

Robinson urges that the District Court should have applied a two-level enhancement under USSG § 2B1.1(b)(1)(B) for a loss of more than $5,000 but less than $10,000 – based on the $5,869 loss intended by Robinson alone – and should not have applied the enhancement for the number of victims. Robinson contends that the District Court erred in finding that Lynn's conduct was reasonably foreseeable to Robinson under USSG § 1B1.3(a)(1)(B), relying for the first time on appeal on an Application Note in the Guidelines Manual, specifically § 1B1.3, cmt. n. 2(c)(6).

Robinson states that he was operating parallel to, but independent of, the other check-cashers.[3] He contends that

_____

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291.

[3] Robinson also urges that the conspiracy in this case was a "hub-and-spoke" conspiracy in which several "mini-conspiracies" revolved around one "point person" and the only common ground between the "spokes" was their relationship to

4

"interdependence of the defendants (i.e., pooling of resources) . . . is the appropriate measure by which to gauge joint activity." Appellant's Br. 15. Because Robinson's role in the scheme was not dependent upon the success of the other check-cashers, nor did they share any profits, he argues that he should be held accountable for sentencing purposes for only the checks he himself tried to cash.[4]

---

the person at the "hub" of the conspiracy. Appellant's Br. 12 (citing *United States v. Kemp*, 500 F.3d 257, 287-93 (3d Cir. 2007)). In *Kemp,* we emphasized that in a hub-and-spoke conspiracy there is a lack of interdependence between the spokes in that their role in the scheme is not dependent upon others, nor are they aided by or at all interested in the success of the others. 500 F.3d at 290. Robinson contends that there was no showing of any "material interdependent conspiratorial activity" between himself and any other check-cashers. Appellant's Br. 13. However, in *Kemp* we defined this type of interdependence as a requirement for a conspiracy conviction, not a sentencing enhancement.

[4] In footnote 11 of his appellate brief, Robinson contends that he is entitled to an evidentiary hearing to decide whether his appearance with another individual in a check-cashing place is sufficient to apply an enhancement under USSG § 1B1.3. However, he does not contest that he was in a check-cashing place at the same time as Lynn, so an evidentiary hearing would not be probative. The sufficiency of this evidence for sentencing purposes is disputed, but the facts are not.

It is undisputed that Robinson and Lynn were at a check-cashing store together on two occasions, that Robinson knew Lynn, and that Robinson knew Lynn was cashing stolen Treasury checks supplied by Jeffress. Based on these facts, the government urges that it was not clearly erroneous for the District Court to conclude by a preponderance of the evidence that Lynn's conduct was foreseeable to Robinson and was in furtherance of jointly undertaken criminal activity, and was thus relevant for sentencing purposes.

We review a district court's application of sentencing enhancements for abuse of discretion. *United States v. Kennedy*, 554 F.3d 415, 426 (3d Cir. 2009).

Under USSG § 1B1.3(a)(1)(B), Robinson's guideline offense level is determined, in relevant part, by considering:

> in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity . . . .

The application notes to the guidelines clarify this by stating:

> [i]n the case of a jointly undertaken criminal activity, subsection (a)(1)(B) provides that a defendant is accountable for the conduct (acts and omissions) of others that was both:

6

(i) in furtherance of the jointly undertaken criminal activity; and

(ii) reasonably foreseeable in connection with that criminal activity.

. . . .

In determining the scope of the criminal activity that the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement), the court may consider any explicit agreement **or implicit agreement fairly inferred from the conduct of the defendant and others**.

United States Sentencing Guidelines Manual § 1B1.3, cmt. n. 2 (emphasis added).

We have summarized these guidelines by saying, "[i]n order to be included in determining the defendant's offense level, the loss resulting from the acts or omissions of others must be: '(1) in furtherance of the jointly undertaken activity; (2) within the scope of the defendant's agreement; and (3) reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake.'" *United States v. Gricco*, 277 F.3d 339, 356 (3d Cir. 2002) (quoting *United States v. Duliga*, 204 F.3d 97, 100 (3d Cir. 2000)).

7

The issue before the District Court at sentencing was whether the checks Lynn cashed were in furtherance of criminal activity jointly undertaken by, and reasonably foreseeable to, Robinson. In determining the scope of the joint criminal undertaking, the District Court could consider an "implicit agreement fairly inferred from" Robinson and Lynn's conduct. United States Sentencing Guidelines Manual § 1B1.3, cmt. n.2. The guidelines specifically state that the joint criminal activity does not have to be charged as a conspiracy. *Id.* at § 1B1.3(a)(1)(B); *see also United States v. Jarvis*, 258 F.3d 235, 245 (3d Cir. 2001) (finding that losses of victims that the defendant was not held responsible for in terms of his conviction may nonetheless properly be considered under a preponderance of the evidence standard as relevant sentencing information under USSG § 1B1.3(a)).

Here, there was evidence from which the District Court could reasonably infer that there was an implicit agreement between Robinson and Lynn to cash stolen checks for Jeffress.[5]

---

[5] In *United States v. Perez*, we upheld the district court's finding of an implicit agreement based largely on the fact that defendant Edmundo Batoon was often in drug-dealer Lirio Del Rosario's apartment where drugs were stored and sold. 280 F.3d 318, 353-54 (3d Cir. 2002). In *Perez,* the district court found Batoon responsible for the full amount of drugs in the apartment for sentencing purposes because it determined that Batoon provided security to Del Rosario. *Id.* at 353. On appeal, Batoon argued that he never agreed to provide security. We dismissed this argument stating:

Robinson and Lynn knew each other, Robinson knew Lynn was cashing stolen checks for Jeffress, and they were in the same check-cashing store at the same time on two occasions. Moreover, there was evidence that Jeffress drove the check-cashers to and from the check-cashing location, so an inference could be drawn that Robinson and Lynn came and went to the location together. After reasonably inferring from Robinson and Lynn's conduct that an implicit agreement existed between the two, it follows that the checks Lynn cashed were reasonably foreseeable to Robinson and were in furtherance of their joint criminal activity. Therefore, the District Court did not clearly err in finding by a preponderance of the evidence that Robinson and Lynn were engaged in joint criminal activity, that the checks Lynn cashed were within the scope of and in furtherance of their agreement and were reasonably foreseeable

---

Batoon's argument fails to recognize that the agreement can be explicit or an "implicit agreement fairly inferred from the conduct of the defendant and others." U.S. Sentencing Guidelines Manual § 1B1.3, cmt. n. 2. Here, from Batoon's conduct (specifically his remaining in Del Rosario's apartment for a significant amount of time while several others came and went), the District Court found an implied agreement between Del Rosario and Batoon to provide security.

*Id.* at 353-54.

to Robinson, and that therefore Robinson was responsible for the checks Lynn cashed for sentencing purposes.

Lastly, Robinson contends that the victim-based enhancement should not have been applied to his sentence because it was not applied to his co-defendant Davis' sentence, despite the Probation Department's having found Davis criminally responsible for 25 out of the 27 checks involved in the scheme. Robinson urges that a district court, in determining an appropriate sentence, is to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C.A. § 3553(a)(6). Robinson contends that by not applying the same enhancement to his co-defendant Davis, the District Court ignored § 3553(a)(6). We disagree.

In order for us to conclude that the District Court erred in not considering the need to avoid unwarranted sentencing disparities, Robinson would need to show that he was similarly situated to Davis. *See United States v. Charles*, 467 F.3d 828, 833 (3d Cir. 2006) ("[The defendant] has not shown that any of the defendants in the District Court cases to which he cites are similarly situated to him for purposes of comparing career offenders with a history of institutional misconduct, . . . and therefore relevant for a § 3553(a)(6) comparison. Even if he had, a mere similarity would not be enough to overcome the high level of deference we accord sentencing judges."); *United States v. Parker*, 462 F.3d 273, 277-78 (3d Cir. 2006) ("Although § 3553(a) does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so," but "§ 3553(a)(6) by its

terms plainly applies only where co-defendants are similarly situated."). Robinson extracts certain information from Davis' Presentence Report, prepared by the Probation Department. However, Robinson fails to discuss any specifics of Davis' plea agreement, sentencing arguments, or the District Court's sentencing analysis. We have no basis for concluding that the District Court viewed Davis' conduct similarly to Robinson's in terms of the victims, particularly because Robinson's victim enhancement resulted from his being responsible for Lynn's conduct as well. We cannot conclude that Robinson's sentence was unreasonable based on the mere allegation of a difference between the Court's sentencing calculations in the two cases.

For the foregoing reasons we will AFFIRM the Judgment and Commitment Order of the District Court.

11