NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 09-3433

---

UNITED STATES OF AMERICA

v.

MICHAEL SINKO,
Appellant

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-07-cr-00703-003)
District Judge: Honorable Legrome D. Davis

---

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 17, 2010

Before: SCIRICA, RENDELL and FISHER, *Circuit Judges*.

(Filed: September 17, 2010)

---

OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

On April 23, 2009, Michael Sinko was convicted by a jury of one count conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and one count of aiding

and abetting money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). The District Court sentenced Sinko to 30 months in prison and three years of supervised release. On appeal, Sinko challenges the reasonableness of his sentence. For the reasons set forth below, we will affirm.

I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.

During the summer of 2005, Sinko, Craig Scher, James Bell, and John Palmer discussed the possibility of Palmer purchasing a condominium from Sinko as a method to launder funds that Palmer had fraudulently obtained from his employer.[1] The condominium project was owned by Sinko and financed by NOVA Bank, of which Scher was the Regional President and Sinko was outside counsel. Palmer informed Sinko that a portion of the payments made for the condo would be in stolen money and that he did not want these payments reported on the sales agreement. Palmer and Sinko discussed the possible ways in which the payments could be kept off the record including adding addenda to the sales agreement to reflect the cash payments made to Sinko, as seller of the condo. On September 29, 2005, Sinko accepted $15,000 cash from Palmer as the first

[1] John Palmer was actually undercover FBI agent John Roberts.

payment of the $100,000 to be laundered and Sinko produced an addendum to the sales agreement to reflect this first installment payment.

On October 3, 2005, Palmer telephoned Sinko and reiterated the need for discretion in handling the cash payments for the condo. Palmer explained that his scheme was to submit false invoices to his employer and the resulting checks were mailed from his employer to a post office box in New Jersey. Palmer informed Sinko that he needed to launder the resulting funds into a more usable form. Sinko made no objection to the source of the funds and, on November 8, 2005, Sinko accepted a second payment of $15,000 cash.

Following a jury trial, Sinko was convicted of one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and one count of aiding and abetting money laundering, in violation of 18 U.S.C. § 1956(a)(3)(B). The District Court requested that a Presentence Investigation Report (PSR) be prepared for the sentencing hearing. The PSR determined that U.S.S.G. Section 2S1.1(a)(1) was applicable to the money laundering offenses. Under § 2S1.1(a)(1), the base offense level for money laundering is based on the offense level of the underlying offense from which the laundered funds were derived. The PSR found that the appropriate underlying offense was mail fraud, which carries a base offense level of seven. Pursuant to § 2B1.1(b)(1)(E), eight levels were added to the base offense level to reflect Sinko's intent to launder $100,000 from a mail fraud scheme. Two levels were also added because he was

convicted under the money laundering statute, pursuant to § 2S1.1(b)(2)(B). Finally, the PSR added an additional two levels to reflect an abuse of trust pursuant to § 3B1.3, because the money laundering scheme that Sinko committed involved a bank with which Sinko had a fiduciary relationship. Sinko's resulting total offense level was 19, with a criminal history category of I, resulting in an advisory guideline range sentence of 30 to 37 months of imprisonment.

At Sinko's August 6, 2009 sentencing hearing, the District Court accepted the findings of the PSR and denied Sinko's various objections. The District Court ultimately sentenced Sinko to 30 months of imprisonment and a term of three years' supervised release. The Court also ordered Sinko to pay a $50,000 fine and a $200 special assessment.

Sinko filed a timely notice of appeal.[2]

II.

We review a district court's legal conclusions regarding the advisory sentencing guidelines de novo, *see United States v. Hawes*, 523 F.3d 245, 249 (3d Cir. 2008), its application of the guidelines to the facts for abuse of discretion, *id.* at 248-49, and its factual findings for clear error, *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

---

[2]The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

III.

Sinko appeals the District Court's sentence on several grounds. He asserts that the District Court: (1) incorrectly calculated his base offense level; (2) failed to adequately consider the factors set forth in 18 U.S.C. § 3553(a); (3) erred in determining sentencing enhancements and reductions regarding his role in the money laundering conspiracy; and (4) failed to consider discrepancies between his sentence and other similarly situated defendants under § 3553(a)(6). Because these arguments are plainly contrary to the record, we reject them.

District courts must engage in a three-step sentencing process which necessitates: (1) calculating a defendant's guidelines sentence precisely as the court would have before *Booker*; (2) formally ruling on any departure motions; and (3) exercising their discretion by considering the relevant 18 U.S.C. § 3553(a) factors. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

Our appellate review proceeds in two stages. "We must first ensure that the district court committed no significant procedural error in arriving at its [sentencing] decision" and, if it has not, "we then review the substantive reasonableness of the sentence." *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008). "At both stages of our review, the party challenging the sentence has the burden of demonstrating unreasonableness." *Tomko*, 562 F.3d at 567.

A.

Sinko argues that his base offense level of seven was incorrectly calculated because the District Court erred in concluding that the underlying offense of his money laundering offense was mail fraud. We reject this contention.

U.S.S.G § 2S1.1(a)(1) calls for an application of the base offense level of the offense from which the laundered funds were derived. The District Court agreed with the determination of the PSR that the laundered funds were derived from mail fraud, pursuant to 18 U.S.C. § 1341, and applied the mail fraud base offense level of seven. (App. at AA33.)

The elements necessary to establish the offense of mail fraud are (1) a scheme or artifice to defraud for the purpose of obtaining money or property and (2) use of the mails in furtherance of the scheme. *United States v. Yusuf*, 536 F.3d 178, 187 (3d Cir. 2008) (summarizing the elements of 18 U.S.C. § 1341). A scheme to defraud need not contemplate the use of the mails as an essential part of the scheme so long as the mailing is "incident to an essential part of the scheme." *Schmuck v. United States*, 489 U.S. 705, 710-11 (1989).

The District Court points out, and the record makes clear, that Sinko was aware that the funds to be laundered were derived from a fraud perpetuated through the use of a post office box. (App. at AA33.) Sinko's argument that embezzlement was the proper underlying offense is meritless as the stolen funds were not Government property, a

required element of 18 U.S.C. § 641. Nothing in the record indicates that the District Court abused its discretion in finding that the facts of this case satisfied the necessary elements of mail fraud for purposes of determining Sinko's base offense under § 2S1.1(a)(1).

B.

Sinko contends that at no time during the sentencing hearing did the District Court touch upon the § 3553(a) factors. (Sinko Br. at 20.) Based on the record, this argument plainly fails.

"[T]he touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *Tomko*, 562 F.3d at 568 (internal quotations and citations omitted). A court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear that the court took the factors into account in sentencing." *United States v. Cooper*, 437 F.3d 324, 329 (3d Cir. 2006).

The record indicates that the District Court discussed and gave meaningful consideration to the numerous § 3553(a) factors in sentencing Sinko. (*See* App. at AA98 (referencing the "sentencing structure as reflected in [§] 3553[a]").) The District Court in fact stated, "I think you going to jail actually would satisfy a number of very important sentencing principles" and then proceeded to discuss the § 3553(a) factors. (App. at AA97-99). Taken as a whole, the record shows the court adequately considered the

§ 3553(a) factors and reasonably applied them to the circumstances presented in Sinko's particular case.

C.

Sinko argues that his sentencing offense level should have been lowered two levels due to his minor role in the offense, pursuant to U.S.S.G. § 3B1.2, and that his offense level should not have been increased two levels for an abuse of trust, pursuant to U.S.S.G. § 3B1.3. These arguments both fail.

First, § 3B1.2 calls for a decrease in the offense level by two "[i]f the defendant was a minor participant in any criminal activity[.]" Having presided over the jury trial and heard all of the facts presented, the District Court stated at the sentencing hearing that "[Sinko's] involvement far exceeds, as a factual matter, a minor role." (App. at AA37.) The record supports the District Court's conclusion that Sinko did not have a minor role under § 3B1.2. Sinko discussed with Palmer possible methods to launder the stolen funds, accepted two payments from Palmer to be laundered, and prepared the necessary paper work to hide the payments. We cannot conclude that the District Court abused its discretion in declining to reduce Sinko's offense level for having a minor role in the money laundering scheme.

Second, Sinko does not dispute that in representing NOVA Bank as a banking lawyer he was in a position of trust with NOVA; rather, he argues that he did not use this position of trust to facilitate the commission of his offense. Section 3B1.3 provides for

an increase of two levels if "[1] the defendant abused a position of public or private trust, or [2] used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." In this case, NOVA was connected to the transaction at issue in two ways: (1) NOVA financed Sinko's condominium development project; and (2) Palmer was to receive a loan from NOVA in exchange for bribes to Sinko's co-defendants. Sinko's concealment from NOVA of his involvement in the condominium complex and his preparation of the documents needed to conceal Palmer's cash payments support the District Court's finding that Sinko's position of trust with NOVA assisted in facilitating the money laundering scheme and warranted a two level increase under § 3B1.2. The District Court did not abuse its discretion in concluding that § 3B1.2 was applicable to Sinko.

D.

Finally, Sinko argues that the District Court abused its discretion by failing to consider discrepancies between his sentence and other similarly situated defendants under § 3553(a)(6). *See* 18 U.S.C. § 3553(a)(6) (requiring a sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who had been found guilty of similar conduct"). This contention, too, lacks merit.

In support of this argument, Sinko relies on two cases he cited to the District Court in which defendants were convicted of what he claims are more serious offenses and

received lesser sentences. According to Sinko, the District Court failed to explain why his case warranted a longer sentence than the cases he cited.

Contrary to Sinko's assertion, the District Court explained that an individualized application of the § 3553(a) factors to Sinko's case required a different result than the cases he cited. (App. at AA87-88.) In addressing Sinko's argument at the sentencing hearing, the District Court stated that sentencing can vary from case to case "based upon the sentencing considerations that were represented to the judge at that particular time." (*Id.*) Further, Sinko has failed to offer any evidence that the defendants in the cases he cites were similarly situated to him. *See United States v. Robinson*, 603 F.3d 230, 234-35 (3d Cir. 2010). The sentence imposed was more than justified by the reasons given by the District Court, and the Court adequately considered the need to avoid unwarranted sentencing disparities.

IV.

For the foregoing reasons, we will affirm the sentence of the District Court.