NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3610
_____

UNITED STATES OF AMERICA

v.

KAREEM RUSSELL,
a/k/a "REEM",
                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 09-cr-672-03)
District Judge:  Hon. Gene E.K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2012

Before:  SCIRICA, FISHER, and JORDAN, *Circuit Judges*.

(Filed: November 15, 2012)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Kareem Russell pleaded guilty in the United States District Court for the Eastern

District of Pennsylvania to multiple offenses involving conspiracy, fraud, and identity

theft.  Russell challenges the sentence he received, arguing that the District Court erred

when it denied him a minimal or minor role reduction pursuant to § 3B1.2 of the United States Sentencing Guidelines, and further contending that the Court erred in holding him accountable for a financial loss caused by events beyond his participation in the conspiracy. For the reasons that follow, the District Court was correct in denying Russell's motion for a minimal or minor role reduction, but incorrect, on the evidence presented, in holding Russell accountable for the full loss of $825,831. We will therefore vacate the sentencing order and remand for resentencing.

## I. Background

On October 15, 2009, a federal grand jury in the Eastern District of Pennsylvania returned an indictment against Russell and his co-defendants. Later, on February 18, 2010, a superseding indictment was filed charging Russell with one count of conspiracy to commit bank fraud and aggravated identity theft, in violation of 18 U.S.C. § 371 (Count 1); two counts of bank fraud and aiding and abetting, in violation of 18 U.S.C §§ 1344, 2 (Counts 3 and 4); and two counts of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. § 1028A(a)(1), (c)(5) and 18 U.S.C. § 2 (Counts 42 and 43). On June 13, 2011, Russell entered an open guilty plea to each of those counts.

The charges were based on a bank fraud and identity theft conspiracy headed by Russell's co-defendant Miguel Bell. Russell's brother, Christopher Russell, also participated in the conspiracy. Bell, Russell, his brother, and the other co-defendants illegally obtained bank account and personal information of bank customers from bank employees and an insurance company employee. The defendants used that information to create false identification papers and fraudulent checks in the name of bank customers.

2

The defendants then recruited individuals, called "check runners," to use the false identities to cash the fraudulent checks. On the evidence presented at sentencing, Russell was responsible for recruiting two check runners, Priscilla Torres and Ralph Guy. Guy, in turn, recruited his common-law wife, Jennie Hill. At sentencing, the Government introduced, without objection, the testimony that Torres and Guy gave at Bell's trial. The Government concedes that it submitted no evidence that Russell knew about any additional check runners besides those he recruited, including Hill.

The Probation Office submitted a pre-sentence report ("PSR") in which it calculated the loss attributable to Russell from the conspiracy to be $825,831.[1] The PSR provided that the amount of that loss required a 14-level enhancement pursuant to Guidelines § 2B1.1(b)(1)(4). The PSR also provided that Russell's total offense level was 19 and his criminal history category was VI. That, along with Russell's convictions for aggravated identity theft, which carried a mandatory minimum 24-month and a maximum 48-month consecutive sentence, resulted in an effective Guidelines range of 87 to 126 months. Russell objected to that range. He argued that he was entitled to a downward adjustment as a minimal or minor participant in the conspiracy, pursuant to Guidelines § 3B1.2. He also argued that he should not be held accountable for $825,831 of the loss.

---

[1] That loss figure was the combined total of "actual and attempted loss" that the Probation Office recommended and the District Court agreed should be attributed to Russell. (*See* PSR ¶ 91.) The actual loss attributed to him for restitution purposes was $702,510. The total loss and attempted loss to the banks for the entire conspiracy was calculated by the Probation Office to be $2,492,339.

After considering the testimony of Russell, Torres, and Guy, the District Court rejected both of Russell's arguments. It decided that Russell was more than a minimal or minor participant in the conspiracy, and that the loss of $825,831 was rightly attributable to him. As a result, the Court sentenced Russell to 70 months' imprisonment on each of Counts 3 and 4 and 60 months' imprisonment on Count 1, to be served concurrently; consecutive to the 70 months, the Court sentenced Russell to concurrent 24 months' imprisonment on each of Counts 42 and 43, for a total sentence of 94 months' imprisonment, followed by five years of supervised release, and restitution of $702,510. Russell filed this timely appeal.

## II.  Discussion[2]

Russell appeals his sentence, arguing that the District Court erred in denying his motion for a minimal or minor role adjustment, and that it also erred in finding that the $825,831 loss was foreseeable for him and therefore attributable to him. We address those arguments in turn.

### A.  *Minimal or Minor Role Reduction*

The Guidelines provide that a defendant's offense level may be reduced by four levels "[i]f the defendant was a minimal participant in any criminal activity," U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3B1.2(a), and by two levels "[i]f the

_____

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We exercise plenary review of the District Court's interpretation of the Guidelines. *United States v. Kennedy*, 554 F.3d 415, 418 (3d Cir. 2009). We review any factual findings that support a sentencing determination for clear error. *Id.*

4

defendant was a minor participant in any criminal activity." *Id.* § 3B1.2(b). A "minimal participant" is one who "plays a minimal role in concerted activity." *Id.* cmt. n.4. The Guidelines further explain that the minimal participant reduction "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." *Id.* A "minor participant" is "a defendant ... who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* cmt. n.5. The following factors are helpful in deciding whether a defendant's role was minimal or minor: "the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *United States v. Rodriguez*, 342 F.3d 296, 299 (3d Cir. 2003) (internal quotation marks omitted).

The District Court concluded that "it's very hard to see in any meaningful way that what the Sentencing Commission had in mind when they describe a minor participant … fits Mr. Russell" (App. at 93-94), and rejected, without comment, the argument that Russell was a minimal participant. Russell contends that was error because he only participated in the cashing of two checks, and that he was unaware of any of the other activities engaged in by his co-defendants. He admits that he recruited Torres and Guy to cash fraudulent checks, but he states that he only recruited them to facilitate his own attempt to obtain money and not as part of a larger conspiracy. He also explains that he was incarcerated for eight or nine months during the time of some of the fraudulent check cashing, from the end of 2005 to April 2007. Given those facts, he says that he was not

5

an integral part of the check-cashing conspiracy and, as a result, should have been granted a minimal or minor role reduction.

Unfortunately for Russell, however, his version of events is not entirely persuasive. There was, in fact, much testimony from both Torres and Guy that contradicts Russell's account. Torres testified that Russell recruited her to pass fraudulent checks. Russell and Bell took her to get identification card photos. Russell escorted Torres on several occasions to banks to cash the checks. And, importantly, after each run, Russell and Torres met with Bell and gave him the money. Torres also testified that Russell recruited her to drive Bell to Indiana in February 2006 to cash checks. Christopher Russell, and "an older couple," identified later to be Guy and Hill, also went on that trip. (Supplemental App. at 6.) After the Indiana trip ended with Hill being arrested, Russell took Torres out again in April 2006 to cash checks in Philadelphia. Russell then took Torres on a check-cashing run in New Jersey. That run ended badly for Torres, when she was arrested at the bank in New Jersey.

Guy also testified that Russell recruited him and took him to have his photograph taken for an identification card. Russell then took him to Delaware in an attempt to cash checks. Thereafter, Russell and his brother Christopher took Guy to Delaware again to cash checks. Christopher Russell later introduced Guy to Bell, who took Guy on a successful check-cashing run. Eventually, Guy and Russell met again, and Russell told Guy that Bell was interested in having Guy cash more checks. Guy then engaged in several check-cashing efforts that were set up by Christopher Russell and Bell. Guy

6

testified that he made many trips to several states in an attempt to cash checks. He also testified that he traveled to Indiana with Torres and Bell.[3]

Faced with the conflicting testimony, the District Court appears to have credited Torres's and Guy's accounts of events more than Russell's account and thus it determined that Russell's role was neither minimal nor minor. We discern no clear error in the District Court's conclusion that Torres and Guy were more credible than Russell. *See United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997) (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)) ("[W]hen the district court's decision is based on testimony that is coherent and plausible, not internally inconsistent and not contradicted by external evidence, there can almost never be a finding of clear error."). Nor was the Court wrong in deciding that Russell was not entitled to a minimal or minor role reduction. He recruited both Torres and Guy, and, according to those two, he was actively involved in the conspiracy in the ways already described. He thus deserved no downward adjustment as a minimal or minor participant.

B.     *Enhancement for Loss Accountability*

Russell also appeals the District Court's attribution to him of $825,831 of the loss. He argues that he was only responsible for $11,743, which is the total of the two checks listed in Counts 42 and 43, to which he pleaded guilty. Any additional loss, Russell argues, is not attributable to him. In the PSR, the Probation Office suggested the loss figure of $825,831, based upon checks presented using the false identities of all Citizens

---

[3] Russell's only response to the testimony of Torres and Guy is that they were lying.

Bank customers victimized during the period of Russell's involvement with the conspiracy. The District Court agreed and concluded that the loss of $825,831 was foreseeable because of Russell's conduct.

Section 2B1.1 of the Guidelines provides a specific offense-level enhancement based upon the economic loss caused by theft crimes. Pertinent here, an offense level is increased by 14 levels for losses of more than $400,000 but less than $1,000,000. *See* U.S.S.G. §§ 2B1.1(b)(1)(H), (b)(1)(I). In the case of conduct jointly undertaken, the loss will be attributed to a defendant for "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).[4] Yet, the loss attributable to a co-defendant is not necessarily coextensive with the breadth of the conspiracy. The Guidelines require an individualized inquiry into whether the loss is attributable to a specific co-defendant. *See United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992) ("[A] searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy is critical to ensure that the defendant's sentence accurately reflects his or her role.").

---

[4] Under § 1B1.3, deciding whether a loss from a conspiracy can be attributable to a particular defendant requires district courts to consider whether the actions of co-conspirators "(1) were in furtherance of the jointly-undertaken activity, (2) were within the scope of the defendant's agreement, and (3) were reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake." *United States v. Price*, 13 F.3d 711, 732 (3d Cir. 1994) (citing *United States v. Collado*, 975 F.2d 985, 995 (3d Cir. 1992)); *see also* U.S.S.G. § 1B1.3 cmt. n.2 ("Because a count may be worded broadly and include the conduct of many participants over a period of time, the scope of the criminal activity jointly undertaken by the defendant … is not necessarily the same as the scope of the entire conspiracy, and hence relevant conduct is not necessarily the same for every participant.").

Here, Russell and the Government agree that the facts submitted at Russell's sentencing do not support the loss figure of $825,831 adopted by the District Court. Instead, they both agree that Russell's sentence must be vacated and this case remanded for resentencing.[5]

The Government notes that the loss figure of $825,831 accounts for all losses, actual and attempted, to Citizens Bank from November 2005 through March 2007 – the period that Russell participated in the conspiracy. But, the Government also acknowledges that the evidence of Russell's involvement in the conspiracy was more limited, involving the procuring of customer identities from a single Citizens Bank employee and recruiting two check runners to utilize that information. There is, on the present record, no basis to conclude that he had any knowledge that his brother Christopher and Bell were procuring other identity information from other Citizen Bank employees. (*See* Appellee's Br. 30-31 ("The government did not present evidence that Kareem Russell had any association with any of the dozens of other runners who attempted to cash those additional checks, nor that Russell was aware that Miguel Bell and Christopher Russell were endeavoring to perpetrate a broader scheme.").) Thus, the Government concedes that, again on this record, the $825,831 loss cannot be entirely attributed to Russell because some of that loss was the result of Bell's and Christopher Russell's recruitment of other check runners, which there is no indication that Russell had any part of. Much to its credit, the Government recognizes that Russell cannot rightly be

---

[5] The Government explains that, on the evidence presented at sentencing, it can attribute, at best, $390,039 of the loss to Russell. That amount is below the threshold of $400,000 that precipitated the 14-level enhancement in Russell's sentencing range.

held accountable for criminal activity of which he was unaware and cannot fairly be said to have foreseen. We accept the parties' agreement that the evidence submitted at sentencing did not support attributing a loss of $825,831 to Russell.

## III. Conclusion

For the reasons noted, we will vacate Russell's sentence and remand for resentencing consistent with this opinion.[6]

---

[6] With respect to resentencing, the parties argue at length about what evidence the District Court may consider and should consider, as well as whether Russell's purported imprisonment during part of the conspiracy should affect the loss total. We need not address those arguments here. The District Court has discretion to allow additional evidence, and we will not in the first instance speculate on what that evidence might be. *See United States v. Dickler*, 64 F.3d 818, 831-32 (3d Cir. 1995) (explaining that it is within district court's discretion to permit further development of record on resentencing and that "district court is in a far better position than we to assess the situation in the light of the circumstances surrounding the original sentencing hearing").