**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1637
_____

UNITED STATES OF AMERICA

v.

KAREEM RUSSELL,
a/k/a/ "REEM",

Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2-09-cr-00672-003)
District Judge: Honorable Gene E.K. Pratter
_____

Submitted Under Third Circuit LAR 34.1(a)
September 26, 2013
_____

Before: CHAGARES, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: October 9, 2013)
_____

OPINION
_____

SHWARTZ, Circuit Judge.

Kareem Russell pleaded guilty in the United States District Court for the Eastern

District of Pennsylvania to conspiracy, fraud, and identity theft arising from a fraudulent

check scheme. The District Court originally imposed a sentence of 94 months'

imprisonment, which was vacated and remanded to recalculate the amount of loss attributable to Russell.[1] United States v. Russell, 504 F. App'x 162, 163 (3d Cir. 2012). On remand, the District Court imposed a sentence of 87 months' imprisonment. Russell appeals this sentence, arguing that the District Court erred in holding him accountable for allegedly unforeseeable pecuniary losses caused by the acts of co-conspirators. We will affirm.

I.

As we write primarily for the benefit of the parties, we recite only the essential facts and procedural history. A federal grand jury returned indictments charging Russell with one count of conspiracy to commit bank fraud and aggravated identity theft, in violation of 18 U.S.C. § 371 (Count 1); two counts of bank fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1344, 2 (Counts 3 and 4); and two counts of aggravated identity theft and aiding and abetting, in violation of 18 U.S.C. § 1028A(a)(1), (c)(5) and 18 U.S.C. § 2 (Counts 42 and 43). Russell entered an open guilty plea to each of those counts.

The charges were based on a bank fraud and identity theft conspiracy headed by Russell's co-defendant Miguel Bell. Bell, Russell, and several other co-conspirators illegally obtained bank account and personal information of bank customers from bank

---

[1] In his first appeal, Russell argued that the District Court erred when it denied him a minimal or minor role reduction pursuant to U.S.S.G. § 3B1.2, and that the District Court erred in calculating the applicable loss amount under U.S.S.G. § 2B1.1. United States v. Russell, 504 F. App'x 162, 163 (3d Cir. 2012). We held that the District Court correctly denied Russell's motion for a minimal or minor role reduction, but incorrectly calculated the applicable loss amount. Id. We therefore vacated Russell's original sentence and remanded for resentencing. Id.

employees and an insurance company employee. The conspirators, who operated out of the Philadelphia area, used that information to create false identification documents and fraudulent checks in the names of bank customers. Bell and Russell, among others, then recruited individuals, called "check runners," to use the false identities to cash the fraudulent checks. The record shows that Russell recruited two check runners, Priscilla Torres and Ralph Guy. Guy, in turn, recruited his common-law wife, Jennie Hill. The Government presented no evidence that Russell knew Hill, but did present evidence that (1) Hill presented $12,416 in fraudulent checks during a road trip to Indiana for which Russell recruited Torres to serve as a driver; and (2) Russell drove Torres and another check runner, Gregory Grayson, to a bank in New Jersey, where Grayson attempted to cash a $2,500 fraudulent check.

At the resentencing hearing, the District Court found that Russell was responsible for $203,705 in loss from his role in the conspiracy and calculated Russell's offense level as 19 pursuant to U.S.S.G. § 2B1.1(a)(1), (b)(1)(G) (2012). Russell was then given a two-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E.1(a), for a total offense level of 17. Russell's criminal history category was VI and therefore the advisory Guideline range, prior to the application of the mandatory consecutive sentences under 18 U.S.C. § 1028A, was 51 to 63 months. Because Russell's convictions for aggravated identity theft under 18 U.S.C. §1028A required a consecutive sentence of a minimum of 24 months and a maximum of 48 months, the District Court added 24 to 48 months to this advisory Guideline range. As a result, Russell's advisory Guideline range was 75 to 111 months.

3

The District Court resentenced Russell to 87 months' imprisonment and 5 years' supervised release.[2] Russell again appeals his sentence.

## II.

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We exercise plenary review of the District Court's interpretation of the Guidelines. United States v. Kennedy, 554 F.3d 415, 418 (3d Cir. 2009). We review any factual findings that support a sentencing determination for clear error.[3] Id. We review the District Court's "application of the Guidelines to the facts for abuse of discretion . . . ." United States v. Blackmon, 557 F.3d 113, 118 (3d Cir. 2009).

## III.

Russell claims that the District Court erred in attributing $203,705 of loss to him. He argues that he should only be responsible for $188,789, which is the total of the checks presented by the check runners Russell recruited, Torres and Guy. Russell argues that the District Court's calculation should not have included the $2,500 check Grayson

---

[2] The sentence consisted of terms of 51 months' imprisonment on Counts 1, 3, and 4, all to be served concurrently, 24 months' imprisonment on each of Counts 42 and 43, with 12 months on Count 43 to be served consecutively to the sentence for Count 42 and 12 months on Count 43 to be served concurrently to the sentence for Count 42, but all of which is consecutive to the sentences on Counts 1, 3, and 4.

[3] "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (alterations and citations omitted).

4

presented in New Jersey or the $12,416 in checks Hill presented in Indiana. Russell's sole argument is that losses attributable to Grayson and Hill should not be attributed to him because he could not have reasonably foreseen these transactions.

Section 2B1.1 of the Guidelines provides a specific offense-level enhancement based upon the pecuniary loss caused by theft crimes. If the loss is more than $120,000 but less than $200,000, the base offense level is increased by 10 levels. U.S.S.G. § 2B1.1(b)(1)(F), (b)(1)(G). If the loss is more than $200,000 but less than $400,000, the base offense level is increased by 12 levels. U.S.S.G. § 2B1.1(b)(1)(G), (b)(1)(H).[4]

To determine the loss amount, the sentencing court must consider the loss amount directly attributable to the defendant's actions and, when the conduct involves a joint undertaking, the reasonably foreseeable losses others caused in furtherance thereof. U.S.S.G. § 1B1.3(a)(1)(B) (requiring a defendant's loss calculation to include the losses from "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity"). For a loss caused by a co-conspirator to be attributable to a defendant, the sentencing court must find that the actions of the co-conspirator "(1) were in furtherance of the jointly-undertaken activity, (2) were within the scope of the defendant's agreement, and (3) were reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake." United States v. Price, 13 F.3d 711, 732 (3d Cir. 1994) (citing United States v. Collado, 975 F.2d 985, 995 (3d Cir. 1992));

---

[4] If the losses attributable to Grayson and Hill were excluded from the District Court's loss calculation, the loss attributable to Russell would be more than $120,000 but less than $200,000 and his Guideline range would drop from 75 to 111 months to 65 to 99 months.

see also United States v. Robinson, 603 F.3d 230, 233-34 (3d Cir. 2010). The sentencing court must conduct "a searching and individualized inquiry into the circumstances surrounding each defendant's involvement in the conspiracy . . . to ensure that the defendant's sentence accurately reflects his or her role." Collado, 975 F.2d at 995.

The District Court correctly found that the $2,500 check that Grayson presented was reasonably foreseeable to Russell. Grayson, while not recruited by Russell, presented his check on a road trip to New Jersey that Russell orchestrated and participated in. Torres testified that Russell picked her and Grayson up, supplied her with fraudulent identification, and then drove them both to a Wachovia Bank in New Jersey, where Grayson attempted to cash the fraudulent check. Given that Russell drove Grayson to the bank with the express purpose of cashing fraudulent checks, the check Grayson presented was reasonably foreseeable to Russell and therefore properly attributed to him.

The District Court also correctly found that the $12,416 in fraudulent checks that Hill presented were reasonably foreseeable to Russell. Torres testified that Russell, at Bell's direction, recruited her to drive to Indiana in February 2006 to cash checks with Bell. Christopher Russell, Russell's brother, and a couple later identified as Guy and Hill also went on the trip. While Russell did not know Hill, he did know the conspiracy's method of operation. Cf. Price, 13 F.3d at 733 (holding that a defendant with "personal knowledge about the scope" of a drug distribution organization "should have reasonably foreseen the quantity of drugs being distributed by the organization"). Specifically, Russell knew that Bell, personally and through others, recruited check runners to travel

6

out of state to cash fraudulent checks, and that, after cashing a check, the check runners either gave the proceeds directly to Bell or to an intermediary, like Russell, who then gave the proceeds to Bell. The trip to Indiana operated in the same way. At Bell's request, Russell recruited a check runner to drive to Indiana for the purpose of cashing checks. Given the long distance from Philadelphia, it is reasonable to infer that Bell wanted as many check runners as possible in the car for the trip to Indiana to maximize the profit. As a result, it was reasonably foreseeable to Russell that check runners, in addition to those he recruited, would be on this trip, which was undertaken to cash checks. Thus, a reasonable inference can be drawn that all checks cashed during the trip were foreseeable to him. It was, therefore, not clearly erroneous for the District Court to attribute to Russell checks presented on that trip, including those Hill presented.

Accordingly, the factual findings concerning the loss amount were not clearly erroneous.

## IV.

For the foregoing reasons, we will affirm the District Court's judgment of sentence.

7