**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3955
_____

UNITED STATES OF AMERICA

v.

SERGEY SOROKIN,
                              Appellant

_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-11-cr-00301-002)
District Judge: Honorable Christopher C. Conner

_____

Submitted Under Third Circuit LAR 34.1(a)
June 13, 2014

Before: AMBRO and BARRY, <u>Circuit</u> <u>Judges</u>, and RESTANI,[1] <u>Judge</u>.

(Filed: June 20, 2014)

_____

OPINION
_____

RESTANI, <u>Judge</u>

    Appellant Sergey Sorokin challenges the district court's calculation of his sentence

following his conviction for bank fraud and wire fraud.  For the following reasons, we

_____

[1] The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

will affirm.

I.

Appellant Sergey Sorokin and his co-defendant at trial Ramil Kismat (together, "the defendants") were convicted of bank fraud and wire fraud.[2] On several occasions between the middle of June and the end of October 2010, the defendants traveled from the New York/New Jersey area to central Pennsylvania to obtain items of value at various retailers by using compromised credit card and debit card accounts. During these trips, the defendants would enter a retail establishment, engage in several transactions, often switching registers and cards, and then move on to another nearby store where they would engage in similar activity. At sentencing the district court applied a fourteen-level enhancement to the base offense level based upon a finding that the intended loss of the fraudulent scheme was $432,118.29. This intended loss figure equaled the aggregate credit limit of each compromised account used in the scheme. The amount the defendants obtained before apprehension was only $25,941.97.

Sorokin challenges his sentence on two grounds. First, Sorokin argues that the district court erred in holding him responsible for fraudulent acts that took place on several dates in August and September 2010 because the government failed to prove that he personally participated in the fraudulent activity on those dates. Second, Sorokin argues that the evidence does not support the district court's finding that the defendants

---

[2] Kismat's appeal is docketed as case number 13-4779.

intended to charge up to the maximum credit limit on each account. We will address each argument in turn.[3]

## II.

We exercise plenary review over the interpretation and application of the Sentencing Guidelines. United States v. Geevers, 226 F.3d 186, 189 (3d Cir. 2000). "[W]here the District Court's application is based on factual conclusions, we will reverse only if its conclusion is clearly erroneous." Id.

## III.

Sorokin argues that fraudulent activity on certain dates in August and September 2010 involved either Kismat alone or Kismat and an unidentified third person. Sorokin notes that neither he nor Kismat were charged as co-conspirators and contends that there was no proof that he and Kismat exchanged cards, co-mingled funds, or were involved jointly in the encryption of stolen credit and debit card information.

When multiple people engage in criminal activity, a defendant may be held responsible, for sentencing purposes, for the loss caused by the acts or omissions of another if the government establishes by a preponderance of the evidence that the acts or omissions were: "(1) in furtherance of the jointly undertaken activity; (2) within the scope of the defendant's agreement; and (3) reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake." United States v. Duliga, 204 F.3d 97, 100 (3d Cir. 2000). "In determining the scope of the criminal activity that the

---

[3] The district court had jurisdiction under 18 U.S.C. § 3231 (2012). We have appellate jurisdiction over Sorokin's sentencing under 18 U.S.C. § 3742(a).

particular defendant agreed to jointly undertake . . . , the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3 n.2 (2013); see also United States v. Robinson, 603 F.3d 230, 234 (3d Cir. 2010) (holding defendant responsible for actions of confederate in stolen check scheme when defendant had engaged in fraudulent activity with co-conspirator on two occasions); U.S.S.G. § 1B1.3 n.2(c)(2) (providing the following illustrative example: "Defendants F and G, working together, design and execute a scheme to sell fraudulent stocks by telephone. . . . Each defendant is accountable for the amount obtained by his accomplice . . . because the conduct of each was in furtherance of the jointly undertaken criminal activity and was reasonably foreseeable in connection with that criminal activity."). A defendant can be responsible for the acts of others even if no conspiracy is charged. U.S.S.G. § 1B1.3(a)(1)(B).

The district court found that Sorokin and Kismat agreed to undertake a scheme stretching from June through October of 2010 involving the use of stolen credit and debit card information to obtain items of value, and that the entirety of Kismat's fraudulent activity was pursuant to that scheme. We cannot say that this conclusion was clearly erroneous. Sorokin accompanied Kismat on at least eight days over a five-month period to engage in fraudulent transactions. The large number of accounts used, the fact that the accounts used on any particular day tended to come from the same financial institution or institutions, and the consistency of the modus operandi suggest that this was a coordinated and ongoing scheme involving Kismat and Sorokin. The district court additionally was warranted in holding Sorokin responsible for the fraudulent activities of

4

anyone accompanying Kismat. Sorokin reasonably could foresee that Kismat would bring another person to assist him in the fraudulent shopping sprees because Sorokin himself accompanied and assisted Kismat on several of these trips.

We thus conclude that the district court did not clearly err in holding Sorokin responsible for the fraud that occurred on the dates contested by Sorokin.

IV.

Sorokin also argues that the district court's intended loss finding of $432,118.29 is unsupported by the evidence. Sorokin lists numerous points to support this contention, including the fact that the actual loss of $25,941.97 was a fraction of that amount, neither defendant admitted to intending to use the cards up to their limits, and the defendants did not use every card until it was declined.

The loss to be used for sentencing purposes shall be "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 n.3(A). "Intended loss" is defined as (I) "the pecuniary harm that was intended to result from the offense; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur." Id. § 2B1.1 n.3(A)(ii). A district court errs by simply equating the intended loss of a credit card fraud scheme with the credit cards' aggregate credit limit without "'deeper analysis.'" United States v. Diallo, 710 F.3d 147, 151 (3d Cir. 2013) (quoting United States v. Geevers, 226 F.3d 186, 192 (3d Cir. 2000)). The facts of the case must support an intended loss finding that equals the aggregate credit limit. Id. Even though a criminal might not expect to succeed in causing the entirety of the potential loss (here, the aggregate credit limit), "expectation is not synonymous with intent when a criminal does not know what he may expect to

5

obtain, but intends to take what he can." Geevers, 226 F.3d at 193. A failure to cause the entirety of the potential loss because of third-party intervention or the defendant's desire to avoid detection does not prevent a finding that the defendant intended to cause the entirety of the potential loss, if it were possible. See id. (approving the use of the face value of worthless checks used in a "check kiting" scheme as the intended loss, despite acknowledging that a check kiter "will either abscond or be discovered before exhausting the kite").

The district court engaged in the "deeper analysis" required. The district court cited Diallo and Geevers in announcing its intended loss finding and gave specific reasons for its conclusion. Here, the district court found that had the defendants, as a practical matter, been able to charge each of the accounts to its limit before being detected, they would have done so. The evidence shows that a majority of the cards were used multiple times unless or until they were declined. For those cards that were not used until they were declined, the district court found based on other evidence that the defendants discontinued their use in order to avoid detection of the scheme by the retailers, financial institutions, or account holders. This finding is consistent with the defendants' rather extensive steps to conceal their use of the compromised accounts, such as traveling from the New York/New Jersey area to central Pennsylvania to make purchases, engaging in only a handful of transactions at each store, and switching registers. The district court thus did not clearly err when it found that the defendants, had it been feasible, would have charged up to the credit limit on each account. See id.

6

## V.

For the reasons set forth, we will affirm.