PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4767
_____

UNITED STATES OF AMERICA

v.

DOUGLAS RICHARDS,
Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 3-09-cr-00400-001)
District Judge: Honorable James M. Munley
_____

Argued January 11, 2012

Before:  SCIRICA, RENDELL and SMITH, Circuit Judges

(Opinion Filed: March 16, 2012)
_____

William Ruzzo, Esq.  **[ARGUED]**
590 Rutter Avenue
Kingston, PA  18704
  *Counsel for Appellant*

William S. Houser, Esq.  **[ARGUED]**
Amy C. Phillips, Esq.
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA  18503
  *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Defendant Douglas Richards, the former Director of Human Resources for the government of Luzerne County, Pennsylvania, appeals the sentence he received after pleading guilty to accepting a bribe.  Richards objects to the District Court's enhancement of his sentence pursuant to § 2C1.2(b)(3) of the Sentencing Guidelines for being a government official in a high-level decision-making or sensitive position.  His appeal requires us to determine, as a matter of first impression in our Court, the standard of review we apply to a district court's application of a sentencing enhancement pursuant to § 2C1.2(b)(3).  We conclude that the clearly erroneous standard is appropriate when reviewing a district court's determination that the enhancement under § 2C1.2(b)(3) applies based on the facts presented.  Under that

2

standard, we hold that the District Court did not clearly err in finding that Richards was a public official in a high-level decision-making or sensitive position. Accordingly, we will affirm.

## I. Facts and Procedural History

In December 2009, Richards was charged with one count of violating 18 U.S.C. § 666(a)(1)(B) for accepting a bribe in excess of $1,000 but less than $5,000 in connection with assistance given by Richards to Continental Consultants, a New York consulting firm interested in contracting with Luzerne County. Richards accepted $1,000 and free New York Mets tickets from Continental Consultants. In exchange, he helped Continental Consultants to obtain a contract with Luzerne County to provide temporary employment services for individuals hired to perform clean-up work in the aftermath of a 2006 flood. Continental Consultants paid Richards because he "got the ball rolling" on the project and assisted in preparing the paperwork for the contract. PSR at ¶ 19. Richards also "did all the administrative work for Continental Consultants' contract with Luzerne County." (App. at 26.)

Richards pled guilty to violating § 666(a)(1)(B). In the Presentence Report, the probation officer recommended a sentence of fifteen to twenty-one months' imprisonment. This recommendation was based on § 2C1.2(a)(1), the applicable guideline for a violation of § 666(a)(1)(B), which set the base offense level at eleven. The probation officer then added two levels pursuant to § 2C1.2(b)(1) because the offense involved more than one gratuity. Next, the probation officer added four levels pursuant to § 2C1.2(b)(3) because

the offense involved a public official in a high-level decision-making or sensitive position. The officer then subtracted three levels for Richards's acceptance of responsibility pursuant to § 3E1.1. The resulting offense level was fourteen. With a criminal history placing him in Category I, the advisory sentencing range was therefore fifteen to twenty-one months.

Richards was sentenced on December 13, 2010 to fifteen months' imprisonment and two years of supervised release. At the sentencing hearing, Richards objected to the four-level enhancement pursuant to § 2C1.2(b)(3). That enhancement provides:

> If the offense involved an elected public official or any public official in a high-level decision-making or sensitive position, increase by 4 levels. If the resulting offense level is less than level 15, increase to level 15.

U.S.S.G. § 2C1.2(b)(3). The commentary to that section, in turn, provides:

> (A) Definition.—"High-level decision-making or sensitive position" means a position characterized by a direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision-making process.

4

(B) Examples.—Examples of a public official in a high-level decision-making position include a prosecuting attorney, a judge, an agency administrator, a law enforcement officer, and any other public official with a similar level of authority. Examples of a public official who holds a sensitive position include a juror, a law enforcement officer, an election official, and any other similarly situated individual.

*Id*. at cmt. n.3. Had that enhancement not been applied, Richards would have faced an advisory sentencing range of six to twelve months.

Richards argued that he was not a public official in a high-level decision-making or sensitive position because: (1) he could not hire or fire anyone; (2) he could not bind the County; (3) he could not act officially on the County's behalf; (4) he had administrative, not policymaking, duties; (5) he reported to superiors, who, in turn, reported to the County Commissioners; and (6) the sentencing court did not apply the high-level government official enhancement to Richards's superior, William Brace, who was also implicated in this bribery scheme.

Richards did acknowledge, however, that, as part of his job duties, he would refer three or four of the top candidates for a job to the County Commissioners for their ultimate hiring. He also administered his own department and made many different types of recommendations to his superiors, the Deputy County Clerk, the County Clerk, and the County Commissioners.

5

At sentencing, the Government introduced the job description for Richards's position as an exhibit in support of applying the enhancement under § 2C1.2(b)(3). According to that description, Richards was "responsible for designing, implementing and maintaining a centralized Human Resource Department." He provided "leadership and oversight of all Personnel Department functions." He also was responsible for "writ[ing], maintain[ing] and apply[ing] the County policies and guidelines by administering and directing a comprehensive human resource program, formulating and recommending policies, regulations, and practices for carrying out programs, consulting and advising the County staff to coordinate the various phases of the policies, practices, ordinances, and resolutions." (App. at 55-56.) Although he agreed that the job description was accurate, Richards contended that it did not, in fact, support application of the enhancement. He submitted a flow chart indicating the hierarchy of officials in the Luzerne County government as evidence that he was not in a high-level decision-making or sensitive position. According to that chart, Richards first reported to the Deputy Clerk, who in turn reported to the Chief Clerk. Together, the Deputy Clerk and Chief Clerk reported to the Board of Commissioners.

The District Court concluded that Richards was subject to the enhancement under § 2C1.2(b)(3). The District Court sentenced Richards to fifteen months' imprisonment and two years of supervised release. Richards filed a timely notice of appeal.[1]

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II. Discussion

On appeal, Richards contends that the District Court erred in finding him subject to the enhancement because, although he was a public official, he did not occupy a high-level decision-making or sensitive position. Before we can determine whether the District Court was correct in applying the enhancement, however, we must first decide under what standard we are to review the District Court's decision — *de novo*, abuse of discretion, or clear error.

A.    Standard of Review

Richards argues that *de novo* review is warranted because the question before us involves an interpretation of the Sentencing Guidelines. *See, e.g.*, *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (exercising plenary review over a district court's interpretation of the Sentencing Guidelines). Richards points out that the essential facts regarding the nature of his employment are not in dispute; therefore, *de novo* review is appropriate because whether those facts fit within the definition of the enhancement necessarily requires the court to interpret that definition. We disagree.

While we review *de novo* a district court's interpretation of the Guidelines, here, the District Court's interpretation of the Guidelines is not really at issue. Richards does not quarrel with the District Court's articulation of what it means to be a government official in a high-level decision-making or sensitive position, for the District Court used the definition of the enhancement exactly as it is recited in the Guidelines. Rather, Richards disagrees with the District Court's conclusion that the facts regarding

7

his employment fit within the Guidelines definition of a government official in a high-level decision-making or sensitive position. This is not properly characterized as an issue of Guidelines interpretation as Richards urges.

Guided by the Supreme Court's instruction in *Buford v. United States*, 532 U.S. 59 (2001), we believe that a more deferential standard of review is appropriate where, as here, we consider a district court's application of the Guidelines to a specific set of facts, that is, where the district court determined whether the facts "fit" within what the Guidelines prescribe. In *Buford*, the Supreme Court addressed the standard that a court of appeals should apply in reviewing a district court's determination that an offender's prior convictions were "functionally consolidated," or "related," for purposes of sentencing. In concluding that deferential review was appropriate, the Court focused on the "relative institutional advantages enjoyed by the district court in making the type of determination at issue." *Id*. at 64 (citations omitted). It reasoned that a district court was in a better position to decide whether various convictions were related, and thus should be consolidated, in part because the district court saw many more consolidations. *Id*. The Court observed, further, that "factual nuance may closely guide the legal decision" of whether to consolidate convictions, "with legal results depending heavily upon an understanding of the significance of case-specific details." *Id*. at 65 (citations omitted). Finally, the Court found significant that the question before it was not a "generally recurring, purely legal matter, such as interpreting a set of legal words, say, those of an individual guideline, in order to determine their basic intent," which a court of appeals may be better suited to answer and would thus warrant less deferential review. *Id*.

"Rather, the question at issue grows out of, and is bounded by, case-specific detailed factual circumstances," which "limits the value of appellate court precedent" because the next court to consider the issue will have a different set of facts before it. *Id*. at 65-66. These considerations, the Court concluded, weighed in favor of deferential review.[2]

---

[2] We should note that the Court also based its holding in part on the existence of 18 U.S.C. § 3742(e), which requires courts of appeals to "accept the findings of fact of the district court unless they are clearly erroneous" and to "give due deference to the district court's application of the guidelines to the facts." Subsequently, the Court decided *United States v. Booker*, 543 U.S. 220, 259-60 (2005), in which it excised § 3742(e) because it contained cross-references to the also-excised provision of the United States Code making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1). In so doing, the Court was particularly troubled by the provision in § 3742(e) requiring *de novo* review of departures from the applicable Guidelines range because it reinforced the mandatory nature of the Guidelines, but it expressed no concerns about the provisions calling for deferential review of findings of fact and application of the Guidelines to the facts. 542 U.S. at 261. Then, in *Grier*, we recognized that § 3742(e) had been excised, *see* 475 F.3d at 564, but nevertheless held that, given the nature of the inquiry and relative institutional advantage, we would continue to apply clear error review to fact-findings by a district court, *see id.* at 569-70. We do not view the excision of § 3742(e) as undermining the Court's reasoning in *Buford*. In fact, in *Rita v. United States*, 551 U.S. 338, 361-62 (2007), Justice Stevens observed that *Booker* did not disturb "the portions of §

9

These same considerations guide our decision here. A district court undoubtedly deals with more applications of § 2C1.2(b)(3) than does a court of appeals. A trial judge's experience with this type of issue at sentencing weighs in favor of applying a more deferential standard of review. Additionally, the facts which illuminate the nature and scope of an individual's position within a government entity will closely guide the decision whether to apply the enhancement, for it is on those facts' particular "fit" within the definition of the enhancement that the district court's decision to apply the enhancement will turn. A district court must determine, based on the facts, whether the defendant possesses "direct authority to make decisions" for a government entity. Similarly, the facts will guide a district court's determination whether a defendant exercises "substantial influence over the decision-making process." § 2C1.2(b)(3) cmt. n.3.

Richards, however, urges that we follow *United States v. Stephenson*, 895 F.2d 867 (2d Cir. 1990), and review the issue here *de novo*. In *Stephenson*, the court reviewed *de novo* whether the defendant, an export licensing officer in the Department of Commerce who decided whether to approve applications to export high-technology equipment to the Soviet Union and China, qualified as a government official in a high-level decision-making or sensitive position within the

3742(e) requiring appellate courts to . . . 'accept the findings of fact of the district court unless they are clearly erroneous,' and to 'give due deference to the district court's application of the guidelines to the facts.'" (Stevens, J., concurring) (quoting 18 U.S.C. § 3742(e)). Thus, we view § 3742(e) as still calling for "due deference" to be given to a district court's application of the Guidelines to the facts.

10

meaning of the enhancement. *Id*. at 878.[3] But *Stephenson* provides no reasoning as to why *de novo* review is appropriate with respect to the enhancement; the court simply stated that "this issue presents a question of law reviewed *de novo*." *Id*. at 877-78. Without any reasoning or additional case law as to why this inquiry should be reviewed *de novo*, and because of the Supreme Court's decision in *Buford*, we will not rely on *Stephenson* as Richards urges and conduct *de novo* review.

We therefore decline to apply *de novo* review. Left with a choice between reviewing for clear error or abuse of discretion, "'the nature of the question presented'" persuades us that, in order to give the appropriate level of deference, we should review for clear error, rather than for abuse of discretion. *Buford*, 532 U.S. at 63 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)). As we explain more fully below, the choice between the two standards here may be a distinction without a difference, for where the determination is fact-driven, a district court will have abused its discretion in imposing a sentence when it bases its decision on clearly erroneous factual conclusions. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008) (citations omitted).

---

[3] At the time the defendant in *Stephenson* was sentenced, the enhancement was set forth in § 2C1.1(b)(2), and called for an eight-level increase in the offense level "'[i]f the offense involved a bribe for the purpose of influencing . . . any official holding a high level decisionmaking or sensitive position.'" 895 F.2d at 877 (quoting U.S.S.G. § 2C1.1(b)(2)). At that time, the Guidelines did not define a high-level decision-making or sensitive position. *Id*.

Clear error review is appropriate when the legal issue decided by the district court is, in essence, a factual question. For example, in *United States v. Brown*, 631 F.3d 638, 644 (3d Cir. 2011), we held that we would review for clear error a district court's determination whether a false statement in a warrant application was made with reckless disregard for the truth. We concluded that this standard of review was appropriate in part because the legal test, which provides that an assertion is made with reckless disregard for the truth when "viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported," essentially requires a court to make a factual determination as to whether "'serious doubts' or 'obvious reasons' existed." *Id*. at 645 (internal quotation marks and citation omitted). The answer to that inquiry, we observed, "is a matter of fact. Serious doubts exist or they do not; a reason for doubt exists or it does not and is obvious or is not." *Id*.

We reasoned that clear error review is appropriate because when the legal issue involves "a 'strictly factual test,' such that once the test is stated no legal reasoning is necessary to the resolution of the issue," "[t]he considerations related to legal correctness and the development of precedent" that favor a less deferential standard of review are of diminished concern. *Id.* at 644. "At the same time, the factual nature of the determination favors the trial court's experience and first-hand observation of testimony and other evidence." *Id*. An appellate court's review of these kinds of decisions, moreover, "will not be of much use in future cases with different fact patterns." *Id*. at 645.

As in *Brown*, the legal test we are applying here is in essence a factual inquiry. That test is set forth in the definition of a government official in a high-level decision-making or sensitive position, and under that test, a district court simply needs to find facts that will answer — either yes or no — whether the government official possesses "direct authority to make decisions" for a government entity or whether the official possesses "substantial influence over the decision-making process." § 2C1.2(b)(3) cmt. n.3(A). The answer to these questions are, as in *Brown*, matters of fact; either a government official will or will not possess "direct authority to make decisions," or will or will not possess "substantial influence over the decision-making process." *Id*. These facts will form the sole basis for the district court's conclusion whether to subject a defendant to an enhancement under § 2C1.2(b)(3). The highly factual nature of this inquiry, and a trial court's relative institutional advantages in conducting it, weigh in favor of clear error review. Moreover, our review of these decisions will be of little help in future cases because the next government official inevitably will be in a different position and have different job responsibilities than the defendant does here.

We are not alone in concluding that whether an individual is a public official in a "high-level decision-making or sensitive position" is a factual determination, reviewable on appeal for clear error. The Courts of Appeals for the Fourth and Sixth Circuits have so concluded, although without extensive discussion of the issue. *See United States v. Mack*, 159 F.3d 208, 220 (6th Cir. 1998) (reviewing district court's application of public official in high-level decision-making or sensitive position enhancement for clear error); *United States v. ReBrook*, 58 F.3d 961, 969 (4th Cir. 1995)

13

(reasoning that the high-level decision-making or sensitive position enhancement is reviewed for clear error because it "turns primarily on fact").

Our decision to apply clear error review is further supported by the fact that many other sentencing enhancements, which call for similarly factual determinations, are also reviewed for clear error. For example, we and other courts of appeals review a district court's decision to apply the "organizer or leader" enhancement, U.S.S.G. § 3B1.1, for clear error. *See United States v. Starnes*, 583 F.3d 196, 216-17 (3d Cir. 2009).[4]

---

[4] *See also United States v. Snow*, 663 F.3d 1156, 1162 (10th Cir. 2011) (reviewing application of the organizer or leader enhancement for clear error); *United States v. Rodriguez-Ramos*, 663 F.3d 356, 364 (8th Cir. 2011) (same); *United States v. Barrington*, 648 F.3d 1178, 1200 (11th Cir. 2011) (same); *United States v. Wardell*, 591 F.3d 1279, 1304 (10th Cir. 2009) (reviewing application of organizer or leader enhancement for clear error because it involves a "factual determination"); *United States v. Garcia-Pastrana*, 584 F.3d 351, 393 (1st Cir. 2009) (reviewing application of organizer or leader enhancement for clear error); *United States v. Gotti*, 459 F.3d 296, 349 (2d Cir. 2006) (reviewing application of organizer or leader enhancement for clear error because it is a "predominantly factual" question); *United States v. Hankton*, 432 F.3d 779, 793 (7th Cir. 2005) (reviewing application of the organizer or leader enhancement for clear error); *United States v. Sayles*, 296 F.3d 219, 224 (4th Cir. 2002) (same); *United States v. Berry*, 258 F.3d 971, 977 (9th Cir. 2001) (same); *United States v. Miller*, 161 F.3d 977, 984 (6th Cir. 1998) (same); *United States v. Sidhu*, 130 F.3d 644, 655 (5th

While that Guideline does not define "organizer" or "leader," it provides factors for the sentencing court to consider when determining whether a defendant qualifies for the enhancement, such as the defendant's "exercise of decision making authority, . . . the degree of participation in planning or organizing the offense, . . . and the degree of control and authority exercised over others." § 3B1.1 cmt. n.4. These factors closely resemble the definition of the enhancement at issue here, because they both require the district court to examine the individual's ability to make decisions or influence decision-making. *See* § 2C1.2(b)(3) cmt. n.3 (explaining that a high-level decision-making or sensitive position is one characterized by "direct authority to make decisions" or "substantial influence over the decision-making process").

Similarly, we review for clear error a district court's reduction of a defendant's base offense level pursuant to § 3B1.2 of the Guidelines for being a "minimal participant" or "minor participant" in criminal activity. *See United States v. Carr*, 25 F.3d 1194, 1207 (3d Cir. 1994). A "minimal participant" is one who is "among the least culpable of those involved," and a "minor participant" is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. nn.4-5. This sentencing adjustment thus requires a sentencing court to closely consider the role the defendant played in the offense, a necessarily factual inquiry. To our knowledge, every other court of appeals joins us in reviewing the application of the

Cir. 1997) (same); *United States v. Gaviria*, 116 F.3d 1498, 1528 (D.C. Cir. 1997) (same).

15

reduction under § 3B1.2 for clear error.[5]  These examples demonstrate that where, as here, sentencing adjustments require a district court to closely examine a set of facts and determine whether they fit within the definition of the adjustment before deciding whether to apply the adjustment, we should review that decision for clear error only.

We note that we have made general pronouncements in the past that we review a district court's application of the Guidelines to the facts for abuse of discretion. *See, e.g.*, *United States v. Blackmon*, 557 F.3d 113, 118 (3d Cir. 2009) (reviewing a district court's "application of the Guidelines to the facts for abuse of discretion"); *United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006) ("We review the District Court's application of the Guidelines to facts for abuse of discretion."). That is correct, and appropriate, where there is room for interpretation as to whether the facts satisfy an essentially legal test, or where a district court can exercise some discretion in deciding whether to apply particular Guideline provisions. However, where, as here, the particular

---

[5] *See also United States v. Leiskunas*, 656 F.3d 732, 739 (7th Cir. 2011); *United States v. McElwee*, 646 F.3d 328, 346 (5th Cir. 2011); *United States v. Mitchell*, 613 F.3d 862, 870 (8th Cir. 2010); *United States v. Bernal-Benitez*, 594 F.3d 1303, 1320 (11th Cir. 2010); *United States v. Rosa-Carino*, 615 F.3d 75, 81 (1st Cir. 2010); *United States v. Blake*, 571 F.3d 331, 352 (4th Cir. 2009); *United States v. Groenendal*, 557 F.3d 419, 423 (6th Cir. 2009); *United States v. Tankersley*, 537 F.3d 1100, 1110 (9th Cir. 2008); *United States v. Martinez*, 512 F.3d 1268, 1275 (10th Cir. 2008); *United States v. Castano*, 234 F.3d 111, 113 (2d Cir. 2000); *United States v. Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000).

Guideline in question sets forth a predominantly fact-driven test, review for clear error is more appropriate. In this case, the abuse of discretion standard does not "fit as well" with the inquiry before us, because "[t]he question is not whether the District Court abused its discretion in choosing among different courses of action. Instead, it is whether the Court perceived the facts correctly." *United States v. Zats*, 298 F.3d 182, 185 (3d Cir. 2002); *see also* Harry T. Edwards & Linda A. Elliott, *Federal Standards of Review* ch. I.E (2007) (explaining that the abuse of discretion standard generally applies to a decision "committed to a trial judge's discretion," *i.e.*, "a decision with respect to which Congress or the courts have decided that there is no single right or wrong answer, but rather a range of acceptable choices"). Here, our role is more appropriately described as determining whether the District Court clearly erred in its determination that the facts fit within the meaning of § 2C1.2(b)(3), rather than whether it abused its discretion by adopting one set of factual findings instead of another.

As noted above, our decision to apply clear error, rather than abuse of discretion, review, is, however, not very significant. The differences that would result under the different standards of review are few, if any. That is because a district court would "abuse its discretion" if it based its decision on clearly erroneous facts. *See Wise*, 515 F.3d at 217 ("[I]f the asserted procedural error is purely factual, our review is highly deferential and we will conclude there has been an abuse of discretion only if the district court's findings are clearly erroneous."); *United States v. Legros*, 529 F.3d 470, 474 (2d Cir. 2008) ("The abuse-of-discretion standard incorporates *de novo* review of questions of law (including interpretation of the Guidelines) and clear-error review of

17

questions of fact."). Thus, if we reviewed application of the enhancement at issue here under the abuse of discretion standard, we would be reviewing the factual findings supporting application of the enhancement for clear error in any event. And we would find that a district court abused its discretion in applying the enhancement based on a particular set of facts only if those facts were clearly erroneous.

Therefore, we will review the District Court's application of the enhancement pursuant to § 2C1.2(b)(3) for clear error.

### B. Application of the Enhancement

Richards contends that he is not subject to the enhancement because he did not possess the requisite power to make decisions for a government entity, nor the ability to influence decision-making by other government officials. He relies principally on *Stephenson* and *United States v. Alter*, 788 F. Supp. 756 (S.D.N.Y. 1992), but that reliance is misplaced because those cases do not provide useful comparisons to the facts of his case.

In *Stephenson*, the court concluded that the defendant, an export licensing officer in the Department of Commerce, was not subject to the enhancement. Although his job of deciding whether to approve applications to export high-technology equipment to the Soviet Union and China "involved some degree of discretion and required him to possess a security clearance," the court concluded that he was not different "from a multitude of personnel in the federal service." 895 F.2d at 878. Richards urges that, unlike the defendant in *Stephenson*, he was not in a position to bargain for cash in exchange for awarding an export license. But this

18

fact-based comparison is unhelpful; the issue is not whether Richards could provide something of value to another. Rather, the inquiry must be focused on whether he could exercise "a substantial influence over the decision-making process" in the Luzerne County government. U.S.S.G. § 3C1.2(b)(3) cmt. n.3(A). The District Court here concluded that he could.

In *Alter*, the court concluded that the director of a halfway house within the federal Bureau of Prisons was not subject to the enhancement. 788 F. Supp. at 767. As director, Alter was eleven levels removed in the bureaucratic chain of command from the highest director of the Bureau of Prisons, and Alter could not impose major disciplinary sanctions without referring the cases to his superiors. *Id*. The court reasoned that "although Alter possessed a sensitive position, some degree of discretion, and *de facto* authority, these characteristics do not render one a 'high-level' government official." *Id*. Richards argues that unlike Alter, he did not have the authority to control inmates' freedoms. Again, this comparison is unhelpful. The relevant inquiry is not whether Richards could control inmates' freedoms, but whether Richards could exercise substantial influence over a decision-making process. Again, the District Court concluded that he could.

We conclude that the District Court did not clearly err in finding Richards subject to the enhancement. Richards admitted that, as part of his job duties, he would refer three or four of the top candidates for a job to the County Commissioners for their ultimate hiring. He also administered his own department and made recommendations to his superiors, the Deputy County Clerk, the County Clerk, and the County Commissioners. Moreover, the job

19

description, the accuracy of which Richards did not contest, supports application of the enhancement. According to the description, Richards was "responsible for designing, implementing and maintaining a centralized Human Resource Department." He also was responsible for "writ[ing], maintain[ing] and apply[ing] the County policies and guidelines by administering and directing a comprehensive human resource program, formulating and recommending policies, regulations, and practices for carrying out programs, consulting and advising the County staff to coordinate the various phases of the policies, practices, ordinances, and resolutions." (App. at 55-56.) The District Court did not clearly err in concluding that these job duties and responsibilities evidenced Richards's ability to substantially influence the decision-making process.[6]

---

[6] We also reject Richards's argument that the District Court erred in applying the enhancement to him because the District Court did not apply it to Richards's supervisor, William Brace. Richards does not support his argument with any comparative evidence and has not demonstrated that he is similarly situated to Brace for sentencing purposes. Without showing that Brace's "circumstances exactly paralleled" Richards's, "a court should not consider sentences imposed on defendants in other cases in the absence of such a showing" by Richards. *United States v. Iglesias*, 535 F.3d 150, 161 n.7 (3d Cir. 2008) (internal quotation marks and citation omitted); *see also United States v. Robinson*, 603 F.3d 230, 234-35 (3d Cir. 2010) (rejecting a defendant's argument that his sentence was unreasonable in light of the fact that his co-defendant was not subject to the same enhancements that he was; we could not conclude that the

### III.  Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

defendant's sentence was unreasonable based solely on the fact that the court applied the enhancement to one defendant but not to the other).  Merely pointing out the difference between his sentence and Brace's sentence does not establish that the District Court clearly erred in concluding that the enhancement should be applied to Richards.