**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 19-1637 & 19-1868
_____

UNITED STATES OF AMERICA

v.

KALIF ENGLISH,
                    Appellant in No. 19-1637
_____

UNITED STATES OF AMERICA

v.

SHARONDA ROSALIE WALKER,
                    Appellant in No. 19-1868
_____

On Appeals from the United States District Court
for the Middle District of Pennsylvania
(D.C. Nos. 4:16-cr-00019-003 & 4:16-cr-00019-005)
District Judge: Honorable Matthew W. Brann
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 30, 2020

Before: CHAGARES, RESTREPO, and BIBAS, *Circuit Judges*

(Filed: March 17, 2020)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Kalif English and Sharonda Walker pleaded guilty to conspiring to distribute heroin. The District Court enhanced each of their Sentencing Guidelines ranges for being organizers or leaders of the conspiracy and for possessing guns during the conspiracy. Because neither of these rulings was clearly erroneous, we will affirm.

## I. BACKGROUND

### A. The facts

English, Walker, and several others ran a sophisticated drug-trafficking network that stretched from southern New Jersey to north-central Pennsylvania. They used prepaid cell-phones, called "traps," to take orders from customers and deliver heroin to them. And they spurred demand by sending mass text messages to alert customers when they had restocked their heroin supplies. After federal authorities wiretapped the phones and made controlled buys, they arrested English, Walker, and their coconspirators. A federal grand jury then indicted English, Walker, and more than twenty coconspirators.

English and Walker each pleaded guilty to one count of conspiring to distribute at least one kilogram of heroin. Over their objections, the District Court applied two Guidelines enhancements to each of their sentences that are relevant here: First, it added a four-level enhancement for being an "organizer or leader" of the network. U.S.S.G. §3B1.1(a). Second, the Court added a two-level enhancement for possessing a gun in the course of the conspiracy. *Id.* §2D1.1(b)(1). After calculating their Sentencing Guidelines ranges, it sentenced each to the bottom of his or her range: 262 months' imprisonment for English and 168 months' imprisonment for Walker, plus five years' supervised release for each of them.

2

### B. Standard of review

On appeal, each challenges the organizer-or-leader enhancement, and English challenges the gun enhancement too. Usually, "'[w]e review the District Court's application of the [Sentencing] Guidelines to facts for abuse of discretion' and its factual findings for clear error." *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018) (quoting *United States v. Tupone*, 442 F.3d 145, 149 (3d Cir. 2006)). But when, as here, the Guidelines "'set[ ] forth a predominantly fact-driven test' [for an enhancement], these two standards become indistinguishable," and we review for clear error. *Id.* (quoting *United States v. Richards*, 674 F.3d 215, 223 (3d Cir. 2012)).

## II. THE DISTRICT COURT PROPERLY FOUND THAT ENGLISH AND WALKER WERE ORGANIZERS OR LEADERS OF THE NETWORK

The District Court correctly enhanced English's and Walker's Guidelines ranges because they had organized and led the drug-trafficking network.

### A. Legal standard

A defendant merits a four-level Guidelines enhancement if he was an "organizer or leader of a criminal activity that involved five or more participants." U.S.S.G. § 3B1.1(a). To qualify, he must have "exercised some degree of control over others involved in the commission of the offense." *United States v. Helbling*, 209 F.3d 226, 243 (3d Cir. 2000) (quoting *United States v. Phillips*, 959 F.2d 1187, 1191 (3d Cir. 1992)). The Government must prove only that he controlled at least one person within the larger scheme, not five. U.S.S.G. § 3B1.1 cmt. n.2; *see United States v. Felton*, 55 F.3d 861, 864 (3d Cir. 1995). If,

however, the defendant was a mere "manager or supervisor," then only a three-level enhancement applies. U.S.S.G. § 3B1.1(b).

To decide whether a defendant was an "organizer or leader," rather than a "manager or supervisor," we weigh several factors. U.S.S.G. § 3B1.1 cmt. n.4. Among them are how much "control and authority" the defendant "exercised over others" and whether he claimed "a larger share of the fruits of the crime" than other participants. *Id.* "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." *Id.*

### B. English started and controlled the network

The District Court properly found that English was an organizer or leader of the network. At sentencing, the Government marshalled substantial evidence that English began the trap-phone scheme, recruited others to help manage the network, sent subordinates to sell heroin, and supervised the network. On appeal, English argues that he was not an organizer or leader because the trap-phone scheme "is not sophisticated and unique." English Br. 11 (No. 19-1637). He also claims that "[a]t most," he merely "'dispatched' [one co-conspirator] to sell 20 bags of heroin." *Id.* And he claims that there was no "direct evidence" of that sale. *Id.* These objections fail for two reasons.

First, a criminal enterprise need not be sophisticated to trigger the leadership enhancement. *See, e.g.*, *Phillips*, 959 F.2d at 1191–92 (applying that enhancement to the leader of a drug network whose subordinate would call his house to get cocaine to distribute). True, sophisticated means can help show that a scheme was "otherwise extensive" and so qualifies for the enhancement even if it involved fewer than five people. *See, e.g.*, *United*

4

*States v. Bennett*, 161 F.3d 171, 193–94 (3d Cir. 1998) (applying that enhancement to a Ponzi scheme with just one other participant). But sophisticated means do not matter here, because more than five people were involved. Plus, even when sophisticated means are required, they need only be "notably more intricate than that of the garden-variety offense." *United States v. Sheneman*, 682 F.3d 623, 632 (7th Cir. 2012) (quoting *United States v. Knox*, 624 F.3d 865, 871 (7th Cir. 2010) (alterations omitted)) (applying the enhancement now codified at U.S.S.G. §2B1.1(b)(10)(C)). The trap-phone scheme easily passes that threshold.

Second, the Government had direct evidence from a confidential informant and surveillance that English directed a subordinate to sell heroin more than once. Controlling just one subordinate is enough. U.S.S.G. §3B1.1 cmt. n.2. So the District Court did not err.

### C. Walker controlled a franchise of subordinate sellers

Likewise, the District Court properly found that Walker was an organizer or leader of the scheme. At her sentencing, the Government introduced evidence that she directed a "distribution franchise" of at least eight coconspirators who sold heroin to her trap-phone contacts. Walker App. 43 (No. 19-1868). The Government also showed that she reaped a larger share of the network's proceeds because she owned a fleet of at least four luxury cars. Under the Guidelines, her substantial share reinforces her leadership role. U.S.S.G. §3B1.1 cmt. n.4; *see, e.g.*, *United States v. Alaniz*, 726 F.3d 586, 622 (5th Cir. 2013).

Walker objects to the District Court's reliance on her social-media posts boasting that she was a "boss" with her "own company." Walker App. 60. To be sure, "titles such as 'kingpin' or 'boss' are not controlling." U.S.S.G. §3B1.1 cmt. n.4. That is especially so

5

when, as here, their colloquial meaning is ambiguous. But Walker's posts went beyond those labels by suggesting that she "[m]ade [her]self a boss" by "employ[ing]" others. Walker App. 61. So while the posts alone are hardly dispositive, they do reinforce the other evidence of her leadership role.

That said, we do see one mistake in the way that the District Court interpreted a different piece of evidence: a wiretapped conversation. The Court thought that Walker had told another coconspirator "that she and Mr. English had, quote, Put other 'young bulls,' end quote, in the Williamsport region to continue servicing drug customers." Walker App. 223. But the record shows that Walker said *English* had put the "young bulls" into service, not that *she* had done so.

Even without this erroneous finding, the District Court still had plenty of strong evidence that Walker was an organizer or leader of the conspiracy. So this lone error does not leave us with "the definite and firm conviction that a mistake [was] committed" in ultimately imposing this enhancement. *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 622 (1993)). The District Court thus did not clearly err.

### III.  THE DISTRICT COURT RIGHTLY FOUND THAT ENGLISH POSSESSED GUNS DURING THE CONSPIRACY

English also challenges the two-level enhancement for possessing a firearm during the commission of a drug offense. U.S.S.G. §2D1.1(b)(1). This challenge fails because the evidence ties English to guns during the conspiracy, and he never rebutted that proof. *See United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014).

6

At his sentencing, the Government summarized wiretapped conversations showing that English "regularly accepted guns in trade for bricks and bundles of heroin." English App. 38 (No. 19-1637). One of his coconspirators did the same. And at his guilty-plea hearing, the Government stated that English and his coconspirators "received firearms from heroin customers and paid them heroin or cash for the guns." Change of Plea Hr'g Tr. 23:17–20, *United States v. English*, No. 4:16-cr-00019-003 (M.D. Pa. Sept. 12, 2018), ECF No. 1434. He neither objected to nor disputed that statement.

In short, the Government proved that English had guns during the conspiracy. So the District Court did not err.

\* \* \* \* \*

English and Walker sat at or near the top of a wide-ranging, sophisticated heroin-trafficking conspiracy. Each managed networks of sellers. And while running this network, each sometimes carried guns. The District Court properly enhanced their Guidelines ranges for their leadership roles and for possessing guns. So we will affirm.