**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3295

UNITED STATES OF AMERICA

v.

GIMY JOSE RODRIGUEZ, a/k/a Carvo
Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-17-cr-00077-001)
District Judge: Honorable Robert D. Mariani
_____

Submitted: December 7, 2021

Before: SHWARTZ, PORTER, and FISHER,
*Circuit Judges*.

(Filed: July 12, 2022)
_____

Shelley L. Centini
88 North Franklin Street
Wilkes-Barre, PA 18701
    *Counsel for Appellant Gimy Jose Rodriguez*

Bruce D. Brandler
Michelle L. Olshefski
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
    *Counsel for Appellee United States of America*

——————————

OPINION OF THE COURT

——————————

**PORTER**, *Circuit Judge*.

Gimy Jose Rodriguez pleaded guilty to two drug-related crimes: (1) conspiracy to distribute and possess with intent to distribute more than one hundred grams of heroin and (2) possession with intent to distribute an unspecified amount of heroin and more than fifty grams of methamphetamine. The District Court sentenced Rodriguez to 262 months' imprisonment, based on a 262–327-month advisory range under the United States Sentencing Guidelines (the "Guidelines"). That advisory range reflects two sentence enhancements, one for being the organizer or leader of a criminal activity involving five or more participants, the other for maintaining a premises for distributing drugs. The only issue Rodriguez raises on appeal is whether the District Court

erred in holding that both enhancements apply. It did not err, so we will affirm Rodriguez's sentence.

I

Rodriguez distributed heroin and methamphetamine in Luzerne County, Pennsylvania. State police investigated, making thirteen undercover purchases of drugs from Rodriguez and his associates. Every purchase was arranged with Rodriguez, but an associate usually delivered the drugs. One of those associates told an undercover police officer that Rodriguez was the boss.

Police also monitored Rodriguez's phone communications. Investigators intercepted hundreds of conversations in which Rodriguez discussed the conspiracy with his associates and monitored their activities. Rodriguez directed his associates where and when to sell drugs, where to stay, and how much to charge. In one conversation Rodriguez told a key co-conspirator, Angela Haggerty, not to extend credit to customers. Haggerty replied that Rodriguez was the boss and assured him she would extend no credit.

The investigation culminated in the execution of two search warrants, one at 17 Wall Street in Wilkes-Barre, the other at 616 Arthur Street in Hazleton. Police found methamphetamine at 17 Wall Street and fentanyl-laced heroin at both locations. Rodriguez lived at 17 Wall Street. Haggerty owned 616 Arthur Street and lived there with another member of the conspiracy. In his plea agreement, Rodriguez admitted that he "most actively distributed drugs" at 616 Arthur Street. His admission comports with the evidence police gathered during their investigation. Rodriguez directed Haggerty's sale

3

of drugs from that location, and he oversaw the activities of his other associates there as well.

## II

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We "review the District Court's interpretation of the Sentencing Guidelines *de novo*, and scrutinize any findings of fact for clear error." *United States v. Kluger*, 722 F.3d 549, 555 (3d Cir. 2013) (quoting *United States v. Aquino*, 555 F.3d 124, 127 (3d Cir. 2009)); *see also United States v. Bell*, 947 F.3d 49, 54 & n.2 (3d Cir. 2020) (reviewing de novo "the meaning of [Guidelines] sections 2B3.1(b)(4)(B) and 1B1.1," and distinguishing this textual analysis from the separate task of "applying that meaning to the . . . case"). We "give *due deference* to the district court's application of the guidelines to the facts." *Buford v. United States*, 532 U.S. 59, 63 (2001) (quoting 18 U.S.C. § 3742(e)); *see also United States v. Richards*, 674 F.3d 215, 219 n.2 (3d Cir. 2012). Affording the appropriate degree of deference typically requires review of the District Court's application of the Guidelines for abuse of discretion, just as the Supreme Court did in *Buford*. 532 U.S. at 64; *see also Kluger*, 722 F.3d at 555. If "the legal issue decided by the district court is, in essence, a factual question," the District Court can "abuse[] its discretion in applying the enhancement based on a particular set of facts only if those facts were clearly erroneous." *United States v. Thung Van Huynh*, 884 F.3d 160, 165 (3d Cir. 2018) (quoting *Richards*, 674 F.3d at 220, 223). So when the Guidelines establish a "predominantly fact-driven test," we review the District Court's application of the Guidelines to the facts for clear error. *Id.* (quoting *Richards*, 674 F.3d at 223).

"[T]he organizer or leader enhancement . . . sets forth such a fact-driven test." *Id.* The drug-premises enhancement requires a similarly fact-intensive inquiry into the degree of control a defendant exercised over the premises and the connection of the premises to illegal activity. *See United States v. Carter*, 834 F.3d 259, 261–63 (3d Cir. 2016). For both enhancements, we review the District Court's application of the Guidelines to the facts for clear error.

III

Rodriguez admits the factual allegations against him. On appeal he challenges only the District Court's application of the organizer-or-leader and drug-premises enhancements.

A

First, Rodriguez appeals the District Court's application of a four-level sentence enhancement for being the organizer or leader of the conspiracy. He admits the conspiracy included at least five participants, but Rodriguez maintains he was not its organizer or leader because his control over the conspiracy was limited and because he shared decision-making authority with his co-conspirators. These arguments are unavailing.

The Guidelines instruct that a defendant's offense level should be increased by four levels if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S. Sent'g Guidelines Manual § 3B1.1(a) (U.S. Sent'g Comm'n 2021) ("U.S.S.G."). "[M]ultiple persons may qualify as organizers or leaders of extensive criminal activity, and a criminal defendant could be an organizer, a leader, or both." *United States v. Adair*, No. 20-1463, 2022 WL 2350277, at *6 (3d Cir. Jun. 30,

2022). "[L]abels, such as 'kingpin' or 'boss,' [do not] provide deep insight into the applicability of the organizer-leader enhancement. Rather, a defendant who meets the definition of an 'organizer' or 'leader' qualifies for the four-point enhancement." *Id.* at *7. (internal citation omitted). Organizers "g[ive] functional structure to a coordinated . . . scheme," and leaders exert "high-level directive power or influence" over it. *Id.* at *7–8. "[S]et[ting] up a network" to obtain and distribute drugs, "decid[ing] when and where sales would occur," "coordinat[ing] drug sales with [subordinates]," and deciding when and whether to extend credit indicate a leadership and organizational role. *Id.* at *8.

The District Court considered these factors when it determined that Rodriguez was the leader of the conspiracy. The record shows what the District Court found: Rodriguez "set the prices," "issue[d] edicts," "dictated to whom and for how much the drugs were to be sold," and provided drugs to his co-conspirators for distribution. App. 85. The factors the District Court considered are probative, and our review of the record does not leave us with "the definite and firm conviction that a mistake has been committed," so, the District Court did not clearly err by applying the sentence enhancement. *United States v. Denmark*, 13 F.4th 315, 317–18 (3d Cir. 2021) (quoting *United States v. Napolitan*, 762 F.3d 297, 307 (3d Cir. 2014)).

B

Rodriguez also appeals the District Court's application of a two-level sentence enhancement for maintaining the drug premises at 616 Arthur Street. The Guidelines advise a two-level enhancement if "the defendant maintained a premises for the purpose of manufacturing or distributing a controlled

6

substance." U.S.S.G. § 2D1.1(b)(12). Rodriguez contends that he did not maintain 616 Arthur Street because his associates owned the premises and used it to distribute drugs. We apply the drug-premises enhancement according to its text and consistent with our interpretation of 21 U.S.C. § 856, which "generally describe[s]" the conduct to which the enhancement applies.[1] Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 6, 124 Stat. 2372; *see Carter*, 834 F.3d 259, 262–63. To decide if the enhancement applies, we examine whether the defendant exercised control over the property "or supervised or directed others to engage in certain activities at the premises." *Carter*, 834 F.3d at 262 (citing discussion of the meaning of "maintain" in *United States v. Morgan*, 117 F.3d 849, 857 (5th Cir. 1997)). Other considerations include "control, curation, acquisition of the site, renting or furnishing the site, repairing the site, supervising, protecting, supplying food to those at the site, and continuity." *Id.* (quoting *United States v. Jones*, 778 F.3d 375, 384 (1st Cir. 2015) (considering factors relevant to maintenance of drug-involved premises under 21 U.S.C. § 856)). Although ownership is probative, the enhancement "does not require either ownership or a leasehold." *Id.* at 263 (quoting *Jones*, 778 F.3d at 385).

In *Carter*, we held that the drug-premises enhancement applied to a defendant who directed that a premises leased by

---

[1] Our sister circuits do the same. *See Carter*, 834 F.3d 262–63. Before *United States v. Nasir*, we also considered the Sentencing Guidelines commentary. 17 F.4th 459 (3d Cir. 2021) (en banc); *see, e.g.*, *Carter*, 834 F.3d at 262. It is unnecessary for us to do so here as there is no genuine ambiguity in the drug-premises enhancement, and its text and history, alone, suffice and support our analysis in *Carter*.

one of his associates be "used to prepare drugs for distribution" and "ensured that his employees were at the house working." *Id.* That "evidence showed that [the defendant] controlled the activities of his employees and the places where essential parts of the operation were conducted." *Id.*

The District Court considered the "high level of control" Rodriguez exercised over his associates, that "Rodriguez directed the activities at the premises in question," and that those premises were one of the "places where essential parts of drug operation[s] were conducted." App. 74. The District Court noted that Haggerty's ownership of 616 Arthur Street was of no moment, just as ownership was not dispositive in *Carter*. *See Carter*, 834 F.3d at 262–63.

The District Court did not err in considering Rodriguez's control over the activities at 616 Arthur Street and did not err in discounting Haggerty's ownership of the premises. Neither was its application of the requirements of the drug-premises enhancement to Rodriguez's conduct clear error. Rodriguez exerted significant control over the premises at 616 Arthur Street and that is sufficient factual basis for the District Court's holding.

\* \* \*

The District Court did not clearly err when applying the four-level sentence enhancement to Rodriguez for being the organizer or leader of a criminal activity involving five or more participants under U.S.S.G. § 3B1.1(a). Nor did it clearly err when applying the two-level sentence enhancement to Rodriguez for maintaining a premises for the purpose of distributing a controlled substance under U.S.S.G.

8

§ 2D1.1(b)(12). We will affirm the District Court's judgment imposing Rodriguez's sentence.