**NON-PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-3285
_____

UNITED STATES OF AMERICA,

v.

AWILDA HENRIQUEZ,
Appellant
_____

On Appeal from the United States District Court for the
District of New Jersey
(D.C. No. 1-18-cr-00161-002)
District Judge: Hon. Robert B. Kugler

_____

Submitted Under Third Circuit L.A.R. 34.1(a):
December 15, 2023

Before: BIBAS, PORTER, and FISHER
*Circuit Judges*

(Opinion filed: March 4, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

PORTER, *Circuit Judge*.

Awilda Henriquez appeals her conviction for fraud and theft-related crimes. She also challenges her 159-month sentence. For these reasons, we will affirm.

I

Henriquez and her co-conspirators operated a Stolen Identity Refund Fraud ("SIRF") scheme. They unlawfully obtained the personal information of Puerto Rico residents and used it to file false income tax returns and employer wage statements. The U.S. Treasury then mailed checks to the purported addresses of the "taxpayers," which were in fact locations accessible to the conspirators. The conspirators bribed mailmen on the route to divert the checks from the mail before delivery in some cases. Finally, they converted the checks into cash using false IDs.

Henriquez personally organized many aspects of the conspiracy and was essential to its success. She recruited and bribed the mailmen, and gave one of them a burner phone. She recruited and paid "runners"—an assortment of friends, family, neighbors and coworkers—to cash the fraudulent tax refund checks. Henriquez obtained fraudulent IDs for the runners and supplied plastic adhesives to cover their fingerprints. She also recruited and bribed tellers at check-cashing agencies to look the other way and process the checks. Finally, after Henriquez realized that the scheme was being investigated, she directed the runners to lie if approached and threatened retaliatory violence if they cooperated with authorities.

The Government investigated the scheme and collected evidence over three years. This required a cyber-investigation, deploying decoy checks, flipping conspirators and

2

convincing them to wear wires, and surveillance. A grand jury charged Henriquez with 27 counts, including conspiracy to steal United States mail and government funds under 18 U.S.C. §§ 371, 641, and 1708; theft of government funds under § 641; and aggravated identity theft under § 1028A.

At trial, a testifying government agent recited a statement from a cooperating witness—who had been a conspirator—that referenced Henriquez without naming her. The Court tentatively admitted this hearsay as a statement against interest but did not establish the declarant's unavailability. The declarant subsequently testified and was cross-examined. Henriquez's counsel first objected to admission of the agent's recitation of the statement but did not renew the objection after the declarant testified.

Henriquez was convicted of all charges, sentenced to 159 months in prison, and ordered to pay restitution. The District Court adopted the factual findings of the Pre-Sentence Report and recommended an offense level calculation of 32, reflecting six enhancements. Henriquez objected to two enhancements: a two-level Sophisticated Means enhancement and a four-level "organizer or leader" enhancement. The District Court overruled these objections.

## II

The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291, and jurisdiction to review final sentences under 18 U.S.C. § 3742.

Ordinarily, this Court reviews decisions to admit evidence for abuse of discretion. *United States v. Scarfo*, 41 F.4th 136, 178 n.35 (3d Cir. 2022); *United States v. Riley*, 621

3

F.3d 312, 337 (3d Cir. 2010). An abuse of discretion occurs only where the district court's decision is "arbitrary, fanciful or clearly unreasonable"—in short, where "no reasonable person would adopt the district court's view." *United States v. Starnes*, 583 F.3d 196, 214 (3d Cir. 2009) (internal quotation marks omitted).

Concerning our review of a District Court's application of Sentencing Guidelines:

We "review the District Court's interpretation of the Sentencing Guidelines *de novo*, and scrutinize any findings of fact for clear error." We "give *due deference* to the district court's application of the guidelines to the facts." Affording the appropriate degree of deference typically requires review of the District Court's application of the Guidelines for abuse of discretion . . . . If "the legal issue decided by the [D]istrict [C]ourt is, in essence, a factual question," the District Court can "abuse[] its discretion in applying the enhancement based on a particular set of facts only if those facts were clearly erroneous." So when the Guidelines establish a "predominantly fact-driven test," we review the District Court's application of the Guidelines to the facts for clear error.

*United States v. Rodriguez*, 40 F.4th 117, 120 (3d Cir. 2022) (citations removed, original emphasis).

III

A

Federal Rule of Evidence 804 permits admission of a hearsay statement against interest "if the declarant is unavailable as a witness[.]" But at Henriquez's trial, a government agent recounted a hearsay statement from a declarant (cooperating witness) who *was* available. Henriquez's counsel objected, but the statement was tentatively admitted as a statement against interest and without requiring a predicate showing of the declarant's unavailability. The declarant then testified and was cross-examined, and Henriquez's counsel did not renew the objection.

4

Even if the District Court erred,[1] it was harmless. For an error to be harmless, "the Government must 'prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Gov't of V.I. v. Davis*, 561 F.3d 159, 165 (3d Cir. 2009) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)). The question "is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error." *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993). Non-constitutional error is a basis for reversal only if it had a "substantial and injurious effect or influence in determining the jury's verdict." *United States v. Greenspan*, 923 F.3d 138, 149 (3d Cir. 2019) (internal quotation marks omitted). The evidence tracing Henriquez's involvement was extensive independent of the hearsay declarant's statement, which did not even include her name. Moreover, Henriquez then had the opportunity to cross-examine the declarant, and did not renew the objection afterward.

---

[1] The government contends that where the judge defers decision on an evidentiary objection and the defendant fails to renew that objection, plain-error review applies. *See United States v. Harris*, 471 F.3d 507, 513 (3d Cir. 2006). If the government is correct and plain-error review applies, Henriquez would have to "show that there is: (1) an error; (2) that is clear or obvious; and (3) that affected [her] substantial rights." *United States v. Gonzalez*, 905 F.3d 165, 182–83 (3d Cir. 2018) (cleaned up); *accord Greer v. United States*, 593 U.S. 503, 507–08 (2021). Yet if the defendant satisfies those three prongs, "an appellate court may grant relief if it also concludes that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *Greer*, 593 U.S. at 508 (cleaned up); *accord Gonzalez*, 905 F.3d at 183. Henriquez would satisfy prongs one and two because Rule 804(b)(3) requires establishing the unavailability of the hearsay declarant, but she fails at prong three because she cannot show that the error affected her substantial rights. But even if she could, she cannot reasonably contend that the error registered a serious effect on the fairness and integrity of the trial.

B

1

Henriquez appeals the District Court's application of the two-level sophisticated

means sentencing enhancement. The US Sentencing Guidelines define "sophisticated

means" as follows:

> For purposes of subsection (b)(10)(C), "***sophisticated means***" means especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1 cmt. n. 9(B).

"A sophisticated means enhancement is appropriate where a defendant's conduct

'shows a greater level of planning or concealment than a typical fraud of its kind.'"

*United States v. Fountain*, 792 F.3d 310, 319 (3d Cir. 2015) (quoting *United States v.*

*Fumo*, 655 F.3d 288, 315 (3d Cir. 2011)).

Our precedent in *Fountain* supports the District Court's application of the

sophisticated means enhancement. In *Fountain*, we held that "[w]hile the Application

Notes to § 2B1.1 suggest that the use of fictitious entities, corporate shells, or offshore

financial accounts would constitute sophisticated means, an offense can easily warrant

the sophisticated means enhancement absent the use of those tactics." 792 F.3d at 319

(cleaned up). Indeed, "[d]etermining whether a defendant employed sophisticated means

can involve considering factors like the duration of a scheme, the number of participants,

6

the use of multiple accounts, and efforts to avoid detection." *Id.* This describes Henriquez's activities. She recruited mailmen as conspirators and provided one of them with a burner phone. She prolifically recruited runners and supplied them with fake IDs and fingerprints. She bribed the tellers at the check-cashing agencies to look the other way. Once the scheme was under investigation, she threatened subordinates with violent consequences if they did not lie to conceal their activities.

In addition, the Sentencing Guidelines suggest that the sophisticated means enhancement appropriately applies to criminal conspiracies spanning multiple jurisdictions. The fraudulent tax returns were filed from New York to arrange delivery of the checks to addresses in New Jersey. *See* U.S.S.G. § 2B1.1 cmt. n. 9(B)).

Henriquez argues that this case involved a routine "SIRF" conspiracy, and that the sophisticated means enhancement should be applied only to cases purportedly more complex or intricate than this one. *See United States v. Fish*, 731 F.3d 277 (3d Cir. 2013); *United States v. Cianci*, 154 F.3d 106 (3d Cir. 1998). Henriquez emphasizes that in *Fish*, the defendant concealed the scheme by instructing an informant to use SIM cards, sweep his car for detection devices, and use code when speaking, and that in *Cianci*, the defendant established an "elaborate scheme" involving a shell corporation and falsified documents. But Henriquez's actions can be described as "elaborate." On top of the above, the fake IDs featured accurate photos of the runners, but used the names of Puerto Rico residents matching the fraudulent checks.

Given the record evidence, the Guideline provision, and *Fountain*, the District Court properly applied the sophisticated means sentencing enhancement.

7

Henriquez also appeals the District Court's application of the four-level "organizer or leader" enhancement.

The Sentencing Commission established a three-tiered enhancement framework for defendants who play an aggravated role in an offense. This includes a four-level enhancement for defendants acting as "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," and a three-level enhancement for acting as "a manager or supervisor (but not an organizer or leader)[.]" U.S.S.G. § 3B1.1(a)–(b). For determining whether the four-level enhancement applies, courts consider these factors:

    (1) the exercise of decision making authority
    (2) the nature of participation in the commission of the offense
    (3) the recruitment of accomplices
    (4) the claimed right to a larger share of the fruits of the crime
    (5) the degree of participation in planning or organizing the offense
    (6) the nature and scope of the illegal activity
    (7) the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1 cmt. n.4.

Our caselaw explains whether the four-level enhancement applies. "There need not be evidence of every factor before a defendant is found to be a leader or organizer." *United States v. Ortiz*, 878 F.2d 125, 127 (3d Cir. 1989) (cleaned up). A leader or organizer "must have a greater degree of operational control over criminal activity" than a § 3B1.1(b) "manager" or "supervisor"—i.e., a leader or organizer must have "high-level directive power or influence over criminal activity." *United States v. Adair*, 38 F.4th

341, 352–54 (3d Cir. 2022). A scheme can have multiple leaders or organizers, and a defendant may be a leader or an organizer, or both. *United States v. Rodriguez*, 40 F.4th at 121.

Henriquez argues that she acted as a mere mid-level actor in a larger enterprise. But the record shows that she exercised executive-level control and that her conduct aligns with the four-level enhancement factors. She recruited, coordinated, equipped and paid the runners, she recruited and equipped the mailmen, and she broadly choreographed the check cashing process. This supports applying the four-level organizer or leader enhancement.

\*   \*   \*

We will affirm the District Court's conviction of Henriquez, as well as the applied sentencing enhancements.

9